SUSAN E. MOORE, Appellant, v. ORIN D. MOORE, Respondent.

Kansas City Court of Appeals, May 12, 1890.

1. **Divorce :** HABITUAL DRUNKENNESS : CONDONATION. If the offense of habitual drunkenness become once distinct and complete though it then ceased, the wife could maintain her action for divorce ; but, if she voluntarily continued the marital relation after the offense was thus complete, she would thereby condone it and nullify her right

to divorce. If the husband continues to be a habitual drunkard the offense is continuous and the wife may break off at any time and establish her right to divorce. And where the wife promises to return and live with her h usband and he promised to give her certain means for her support, but he gave only a small portion thereof and failed as to the rest continuing his drinking which he was to stop, such matters do not amount to a condonation, though for two months after the promise the wife wrote him several affectionate letters. Such matters were not a forgiving, but merely a promise upon condition.

2. ———— : WIFE'S REFUSAL TO ACCOMPANY HUSBAND : EVIDENCE. The evidence of this case fails to make out defendant's defense that his wife refused to go to Dakota with him.

3. ———— : PLEADING : DEFENDANT CONCLUDED, THE PUBLIC NOT. In a divorce case the court need not confine itself to the allegations of the answer, there being three parties to such actions, the plaintiff, the defendant and the public. Though defendant be concluded by his pleading, the maxim applies, "That a cause is never concluded against the judge."

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED AND REMANDED ( *with directions* ).

*Botsford & Williams*, for appellant.

(1) The divorce law guarantees to the wife the right to the companionship of a sober man, and gives her the right to a divorce from a habitual drunkard. As to what constitutes drunkenness see 1 Bishop on Marriage and Divorce, section 813 ; *Golding v. Golding*, 6 Mo. App. 602. Webster defines a drunkard to be : "One who habitually drinks to excess ; one who uses intoxicating liquor immoderately." Webster's Unabridged Dictionary, title, drunkard. As to the difference between the overwhelming positive and affirmative testimony of plaintiff and the negative testimony adduced by defendant, see : 1 Whart. Ev., sec. 415 ; *Sullivan v. Railroad*, 72 Mo. 196 ; *Stitt v. Heidekoper*, 17 Wall. 384 ; *Richards v. Richards*, 19 Ill. 465. (2) The

proof sustaining the further ground for the divorce of indignities, consisting of a continued refusal to support plaintiff and her child, is also amply established. His intemperance was also an indignity. *Dawson v. Dawson*, 23 Mo. App. 174. And the destruction of his business and wasting of his property by his intemperance, and his direction to her to deadbeat her way at the different hotels, were gross indignities. (3) There is no condonation in this case. The case of *Guthrie v. Guthrie*, 26 Mo. App. 566, is a parallel case and is directly in point. 5 American & Eng. Encyclopedia of Law, pp. 820–823. Condonation in this case is not pleaded as a defense. Condonation is not so strict a bar against the wife as against the husband. Ency., *supra*, p. 820, note 12 ; p. 822, note 5 ; 2 Bish. Mar. & Div., secs. 45, 49, 50, 52. The patient endurance of ill-treatment by the wife is no bar to her obtaining a divorce. *Guthrie v. Guthrie, supra*. (4) But condonation always implies and is based upon the condition that the guilty party shall no longer mistreat the party who condones. If, therefore, the letters written by plaintiff to defendant from March, 1886, to July, 1887, be relied upon as proving condonation on her part, then that condonation is removed by the continued failure and refusal of defendant to support his family since January, 1886, to this time. Failure or refusal of an able-bodied married man to provide for the support of his family is made by section 3841, Revised Statutes, 1889, to constitute him a vagrant punishable by fine and imprisonment, and by section 4500 such vagrancy is made a ground for obtaining a divorce. 5 Am. & Eng. Ency. of Law, p. 821, note 1 ; cases and authorities cited above. The agreement of plaintiff and defendant made in May, 1888, is without force, and the resumption of correspondence, immediately following and growing out of it, is also without significance for the reason that defendant did not comply with any part of that agreement, by furnishing a home for his family, or by paying

plaintiff fifty dollars a month for the support of herself and child, or by reforming his habits. And he has not only failed to support them since, but in his letter to Nier in August, 1888, he said what probably was not necessary, and quite superfluous for him to say, that he would not give his wife another cent. On the whole case, this court should reverse the judgment and give a decree here, awarding plaintiff a divorce and the custody of her child. R. S. 1889, sec. 2304.

*John Doniphan*, for respondent.

(1) The petition being sworn to in May, 1888, must be for prior offenses, and the condition in the letters after that is full and complete. *Walker v. Walker*, 2 Phil. 153 to 155. Where the condonation is express as in the letters, the court can have no hesitation in sustaining it. *Quincy v. Quincy*, 10 New Hamp. 272. The case of *Guthrie v. Guthrie*, 26 Mo. App. 576, is not in point, and is unsatisfactory in the reasoning. The divorce seems to have been granted on account of the kindness of the wife. The lapse of time shows condonement. *Dysart v. Dysart*, 1 Robert, 470; *Stokes v. Stokes*, 1 Mo. 320. Where the injury has been fully forgiven, there can be no revival. *Beeby v. Beeby*, 1 Hogg, 789; 3 E. E. R. 338; *Dysart v. Dysart*, 1 Robert, 106. (2) Condonation need not be pleaded. Bishop says that whenever condonation comes out on a trial, it is fatal to the suit. Bishop. Mar. & Div., ch. 19, 382. Courts are so tenacious of the marital relations, in the interest of public policy and morality, that if the court believes condonation exists, it is its duty to inquire into it at any state of the case, even to set aside a default to do so. *Smith v. Smith*, 4 Paige, 432; *Backus v. Backus*, 3 Greenl. 136; *North v. North*, 5 Mass. 320. (3) Where the court has tried a divorce cause without a jury, the special findings of the court are as conclusive in the supreme court as of a jury. *Gibbs v. Gibbs*, 18

Kan. 419.    The supreme court of Kansas says: "The due administration of the law demands, and in the long run the most satisfactory and the most complete justice will be secured, by leaving the settlement of questions of fact to the tribunals which see and hear the witnesses." *Railroad v. Kunkel,* 17 Kansas, 145.

ELLISON, J.—This action is founded on a petition for divorce wherein defendant is charged with habitual drunkenness for a period of more than one year, and with indignities to plaintiff rendering her condition intolerable.    There was no cross-bill; the answer admitted the marriage but denied the allegations against him, and charged that plaintiff had repeatedly refused to go with defendant to Dakota and live with him, although he had been ready and willing to provide her a comfortable home there, and further charged her with having joined a conspiracy with certain other parties, not named by him, to defraud him out of certain real estate and other property.    The circuit court refused the divorce, and the plaintiff has brought the case here for review.

After an examination of the record, we are satisfied that the plaintiff's charge of habitual drunkenness is sustained by the evidence.    It not being necessary, we do not desire to set forth the evidence in detail as to this charge, which we consider as fully sustaining it, The testimony of employes and associates in business, as well as of others who had abundant opportunity for observation, shows that defendant gave himself up to an inordinate appetite for whiskey which incapacitated him for business and rendered him unfit for the society of his wife.    Though not so specific, the evidence further shows quite as conclusively, that in consequence of this habit he failed to support his family and rested content with her dependence upon her relatives.

A great number of letters from her to him were introduced by him at the trial, and these disclose the extremity to which she was put by his inability to care

for or support her.  She had not a postage stamp with
which to mail her letters, save those furnished by her
relatives, except in some instances where she acknowl-
edges the receipt of a stamp inclosed by him.  It is
mainly upon these letters which cover a period from
March 21, 1886, to July 29, 1888, that reliance is placed
to establish that plaintiff condoned defendant's offense.
These letters disclose that she recognized him, the child
and herself as constituting an unbroken family.  They
are filled with expressions of love for him and interest
in his welfare.  They disclose that she looked upon
their interests as joint and identical, nor do they
contain an intimation that she ever expected their
marriage to be dissolved.  It is from the tender spirit
and never ceasing interest, which is thus betrayed that
the contention of condonation arises.  But condonation
is not an absolute term which can be applied alike to
all circumstances which may surround the marriage
relation, and it is not so recognized in the books?  Its
application will vary as the offense said to have been
condoned may vary.  If the offense be adultery, a single
voluntary cohabitation, after knowledge of the offense,
would constitute condonation.  But if the offense be
habitual drunkenness for the statutory period of one
year, the continuance of the marital relation by the
injured party may, or may not, amount to a condona-
tion.

If we could state a case where the husband should
be shown to have been a habitual drunkard for just
one year and no more, the offense would be distinct
and complete, and, though it then ceased, the wife could
maintain an action for divorce ; but, if she voluntarily
continued the marital relation after the offense was
complete, she would condone or forgive the offense and
nullify her right to a divorce.  If, however, the husband
continues to be a habitual drunkard the offense is con-
tinuous and the wife may break off from him at any
time and establish her right to a divorce.  Remaining

with him as his wife, after the offense was first completed, should be attributed rather to a patient endurance with the possible hope of a reclamation, than forgiveness of what had gone before. If her patience ceases and her hopes are unfulfilled, the fact that she was patient, and was disappointed, ought not to debar her from showing the offense which he persists in committing. Now it is shown with enough clearness to satisfy us to find it as a fact, that defendant continued the excessive indulgence of his appetite for strong drink until about the time when the correspondence with his wife ended and she ceased any communication with him. We, therefore, find nothing from this to sustain the contention of condonation.

It appears that parties resided in Kansas City, until January, 1886, when, as it would seem, they separated (she going to her father's house), from an inability on his part to maintain the family. He went out to the Black Hills in Dakota. While he was there and she in Missouri, the greater part of the correspondence was had, and during this time he was informed of her necessities and embarrassments and failed to respond with means for her support or relief. He, however, charges in his answer that she refused to go out to Dakota where he was ready and willing to provide her a comfortable home. The evidence fails to sustain these allegations. Her letters, prior to 1888, show a continued appeal to send her money that she might go to him. They show her to have been, not only willing, but anxious, to put up with privation and hardship, that she might be with him to help him improve his condition. They show that she expected each letter from him would inclose her the means wherewith she might make the trip. They show, too, a patient resignation to continued disappointment in those expectations, which strongly commend her.

Moore v. Moore.

In May, 1888, defendant made a trip from the West and was in Kansas City where he met plaintiff at the house of a friend. She had at this time made out her application for divorce, though it was not filed till November following. At this meeting an understanding was had between them, whereby he was to furnish her fifty dollars per month for the support of herself and child and was to deed her some property, and she was to go out to Dakota. She says, "He promised to give me fifty dollars a month and to give me a deed to property before he would ask me to go out there to Dakota, as he had failed to support me before, and he promised to stop drinking. I made up my mind not to sue for a divorce, if he did as he promised he would do." He gave her twenty-five dollars at this time, but never sent any more on his return, nor did he make a deed to any property. He accounts for this by stating a failure to make sales of interest he had in mining claims in Dakota. During the two months following, she wrote him several letters which appear to be as kind and affectionate as her former correspondence. These matters are also urged as a condonation. We think they do not amount to that. She had become convinced that his continued intemperate habits and mode of life had prevented him from supporting her and the child, but on his promise she consented to delay action. Her expectations and hopes were again not realized and condonation did not take place. Condonation is conditional, and if the offense said to be forgiven is repeated, or not discontinued, there is no condonation. The alleged condonation here was not a forgiving; it was merely a promise upon condition.

II. We have considered the matter of condonation, though the suggestion was made at the argument that it was not pleaded and was, therefore, perhaps, not a proper matter for consideration. We are of the opinion that in this respect, in a case for divorce, we need not

confine ourselves to the allegations of the answer. In such case, there are, as has been said, three parties to the action—the plaintiff, the defendant and the *public*. It is to the interest of society at large to guard against sundering that relation which is its chief foundation. 2 Bishop Mar. & Div., secs. 229, 230, 231, 234, 236, 238. So far as a defendant would be concerned as a matter of right, which he may assert, he would perhaps be concluded by his pleading. But there is a maxim in these suits: "That a cause is never concluded against the judge." 2 Bish. Mar. & Div., sec. 253.

From the whole case we believe the plaintiff to be the injured party and that she is entitled to the decree granting her a divorce for the fault of the defendant and that she should have the continued custody of the infant child. We will, therefore, reverse the judgment, and remand the cause with directions that such decree be entered. The other judges concur.