FRANK P. BLISS, Appellant, v. ROSE BLISS, Respondent.

Kansas City Court of Appeals, January 22, 1912.

1. MARRIAGE AND DIVORCE: Evidence: Sufficiency. Evidence reviewed and held sufficient to justify a decree of divorce because of indignities.

2. ————: Condonation: Indignities Repeated. A mere bearing with mistreatment and indignities, in the hope of their cessation, does not amount to condonation; and if they do not cease, and become unbearable, they may constitute cause for divorce.

3. WITNESSES: Credibility. The credibility of a female witness cannot be successfully attacked for the mere reason that she is a woman, and under a general charge that women, as a class, are untrustworthy and untruthful and should not be believed where their interests are involved.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*Martin J. O'Donnell* for appellant.

(1) The court erred in finding for defendant because her self-contradictory testimony shows that same lacks the credibility on which a decree could be based. Moore on Facts, vol. II, sec. 1262; Clarkson v. Clarkson, 22 Mo. App. l. c. 248; Starkie on Evidence, 583; State v. Jim, 1 Dev. 510; Stoffer v. State, 15 Ohio St. 47. (2) The testimony of defendant discloses

that no indignities within the meaning of the law were offered to her by her husband. Webster Dictionary; Standard Dictionary; Hooper v. Hooper, 19 Mo. 355. (3) If it be conceded that defendant's testimony is worthy of consideration and that plaintiff offered the alleged indignities and that they constituted grounds for divorce, yet that testimony demonstrates that same have been condoned. Leatherberry v. O'Dell, 7 Fed. 641; Youngs v. Youngs, 150 Ill. 230; Twyman v. Twyman, 27 Mo. 383; Bishop, Divorce, Marriage and Separation, sec. 281; 7 Am. & Eng. Ency. of Law, p. 10; Adkins v. Adkins, 63 Mo. App. 351. (4) Plaintiff's testimony bears all the indicia of truthfulness and this being so the court should have found in his favor. Griesediecke v. Griesediecke, 56 Mo. App. 94; English v. English, 139 S. W. 814. (5) The trial court made two contradictory findings of fact: one express, to the effect that defendant was guilty of some of the things charged in the petition because of her own admission of doing things which she ought not to have done and hence that she was not an innocent party; the other implied, in that he found that she was an innocent and injured party, and hence the decree should not be allowed to stand. Hayne New Trial & Appeal, sec. 242, p. 755; Manley v. Howlett, 55 Cal. 94.

*Bowersock, Hall & Hook* for respondent.

(1) The abstract of the record is not sufficient. Harding v. Bedoll, 202 Mo. 625; Greenwood v. Parlin, 98 Mo. 407. (2) The defendant's testimony was not self-contradictory. (3) There were indignities within the meaning of the law. McCarlin v. McCarlin, 37 Mo. App. 471. (4) There was no condonation. Viertel v. Viertel, 123 Mo. App. 63. (5) Appellant's testimony does not bear the indicia of truthfulness. (6) The court did not make two contradictory findings of fact.

ELLISON, J.—Plaintiff brought an action for divorce and defendant filed an answer and a cross-bill. The cause for divorce alleged by each is indignities. The decree of the court was for defendant and plaintiff has brought the case here.

The parties were married on the 7th day of May, 1904; a child was born in 1908, and they separated in May, 1910. An examination of the record and arguments of the respective counsel has brought us to the conclusion to affirm the judgment. The indignities charged in plaintiff's petition are that defendant called him such "vile and vulgar names as to be unfit to appear in the records of the court," and hence the language is not set out. And that on the 3rd of May, 1910, she deserted his home, "taking and kidnaping their minor son," then about two years old.

The indignities charged by defendant against the plaintiff were that he frequently cursed her and threatened to beat her with a trunk strap; and on one occasion when their child was only two months old he ordered her from the house; and at other times stated he would give her two weeks to find a place where she could support herself; and that he failed to support her.

The evidence on the merits of the controversy came from the parties themselves. The testimony of plaintiff did not show the language he says defendant addressed to him was of the vile character indicated by his petition—that is, unfit for print—at least not in an obscene sense. It consisted in charging him with being the sort of a man that would let his wife support herself, and that he was "a dog," "a scoundrel" and "a coward," and that she used these words both with and without "the prefix damn." That she had used profane language to him and had used abusive words to the child, and wished it had died when born, and would yet die; that "she called my brother a pasty-faced, spindle-shanked sort of a man,

weak and frail, always taking cold, just as you are; didn't see how he could ever become half a man." He further testified, we may say as the climax of these distressing incidents, that she had sung to him "a parody on John Brown's body lies a mouldering in the grave."

These charges were denied by defendant in testifying in her own behalf. But plaintiff admitted he had used the language and made the threats attributed to him. It is true he attempted to palliate by saying that while he was not in a passion, yet he "was moderately stirred." He likewise admitted that defendant had supported herself up to the time of her pregnancy, and the scant assistance he rendered after that.

We have not set out all the record recites, of the foregoing character, but enough to picture the whole.

It is, however, insisted that defendant condoned plaintiff's conduct, in that she chose not to consider such conduct as a ground for divorce. The showing in support of this, is that when she left with the child she intended to return, and that she merely went away for a visit and a rest and if plaintiff had not filed his petition for divorce making charges against her which included kidnaping the child, she would have been content not to have proceeded against him. We think the evidence in this regard substantially establishes the following: Defendant desired to visit a sister in Massachusetts and she talked of it with plaintiff during the fall and winter of 1909 and 1910—he made no objection, save that he could not, or at least would not, furnish the money. She told him she could borrow from her sister. She wrote for it and it was sent to her by registered letter which plaintiff brought to her from the postoffice and she told him what it contained. The time was approaching for her to start and she asked plaintiff if he would go to the station

with her and the child, if she took the nine o'clock p. m. train. He said that he would not; that she could get some one else; and on her asking him the reason, he did not reply. She asked if he objected to her going, and still he was silent. It seems that plaintiff then went to a lawyer and had a petition for divorce drawn up, in which he made the charges heretofore stated, including desertion and kidnaping, though she had not yet gone. This petition was mailed to plaintiff by his attorney and thereby fell into defendant's hands. She opened the envelope and read the paper. She had not intended leaving for some time, but on seeing what plaintiff was doing concerning a divorce, she reflected over it that night and concluded to go the next evening (the 3rd of May) at six o'clock. She got ready, with the assistance of a neighbor woman. She did not tell plaintiff she was going, at that time, though he was in the house the night before,—the night of the day she got his petition for divorce. The child became sick on the way to Massachusetts and defendant wrote plaintiff several postals stating its condition. Finally she wrote him for money, and he refused in the following answer, dated July 30, 1910, and directed to her at "Marlboro, Mass.:" "Your letters are received and your request for funds is noted; to grant this it seems to me would be to fully deserve the epithet of 'fool,' which you have seen fit to bestow upon me occasionally. You have by your own act cut yourself off from me and I am not so silly as to condone that act as you seem to expect.

"There are certain legal formalities to be gone through and after that I do not say what I might do, much might depend upon my situation at that time.

"If I am to support the boy I would prefer to do so here where I could enjoy his company and have him with me."

The foregoing is the substance of the evidence relied upon to establish condonation; and they substantially constitute the cause of her determining to file her cross-bill. To condone is to forgive (Viertel v. Viertel, 123 Mo. App. 63, 76), and the fact that one of a married couple may bear with mistreatment by the other, in the hope of a cessation of such conduct, or even in a spirit of resignation to put up with it, will not prevent such person from showing such treatment if she is disappointed in its ceasing, and it becomes unbearable. Especially when, as in this case, an application for divorce is made, containing baseless charges, including that of kidnaping. [Moore v. Moore, 41 Mo. App. 176.]

As has been already stated, the principal difference as to facts arises on the testimony of plaintiff and defendant, one a man and the other a woman, and plaintiff's counsel having no ground for attack upon the defendant in particular, makes the general charge that women, as a class, are untrustworthy and untruthful and therefore we should disbelieve defendant. He cites philosophers and poets as authority for this remarkable proposition. We disapprove and reject the statement. Witnesses, whether male or female, differ in degrees of prejudice, in the sway of self interest and in the lack of proper moral perceptions. But these influences against the truth, affecting either sex, are to be judged by the court and jury, aided by cross-examination by the opposite party.

A full consideration of the record leaves us convinced that the judgment should be affirmed. All concur.