**MARY MACFADDEN v. BERNARR MACFADDEN**

26 So. (2nd) 502                           January Term, 1946
May 28, 1946                                    Division B
Rehearing denied July 2, 1946

*W. F. Parker,* for Appellant.

*Worley, Gautier & Cannon and J. Lewis Hall,* for appellee.

THOMAS, J.:

Bernarr Macfadden sought a divorce from his estranged wife on the grounds that she had treated him with extreme cruelty. After an unsuccessful attack on the bill of complaint the defendant answered, denying the charges against her, but praying nothing save dismissal of the suit. A master was appointed who, about five months and one hundred ninety pages of testimony later, recommended to the court that the plaintiff be awarded a decree of divorce upon, however, his filing an amendment to the bill to meet a certain aspect of the proof. This amendment was not filed, the chancellor deciding that it was unnecessary; the exceptions to the report were denied; and a decree divorcing the parties was entered. This is a skeletal history of the procedure.

One assault on the propriety of the decree is founded on the failure of the chancellor to declare which party prevailed,

he having merely adjudged "that the bonds of matrimony . . . existing between the plaintiff . . . and the defendant . . . be . . . dissolved, and a complete divorce a vinculo matrimonii [be] . . . granted unto the parties . . . " It seems to this writer that a final decree should in all cases clearly designate the successful party and that no exception should be made in a suit for divorce. If in such a contest both parties should appear at fault, or each should have just complaint about the actions of the other, severance of the ties would hardly comport with the principle that where both parties are at fault neither is entitled to relief. Sahler v. Sahler, infra; Wakefield. v. Wakefield, 94 Ore. 605, 185 p. 921. (See 27, C.J.S., Divorce, page 624) One author has said, using the latter case as a reference, that "the right to divorce contemplates a guilty party and an innocent party." Keezer on Marriage and Divorce, page 301. Nor would a decree granting a divorce without designating the guilty party properly safeguard the privilege which the innocent party should enjoy of being recorded as free of wrongdoing. There is no occasion here, though, to upset the decree because it divorces without pointing out that the equities favored the plaintiff. It was he who complained, while his adversary sought no relief. It is better practice even in these circumstances for the chancellor to announce in the decree the name of the winning party, but where, as here, reference to the record itself would disclose that but one party sought relief, the losing litigant may not obtain a reversal because of an omission which amounts more to irregularity than to error. See Sahler, v. Sahler, 154 Fla. 206, 17 So. (2nd) 105.

The appellant complains further that the chancellor ruled improperly on a motion to admit in evidence a certain unsigned letter supposed to have been written by appellee. During the cross-examination of this party litigant the letter was exhibited to him and he was asked to identify it, but he declined to make any more definite statement than—"It looks like my handwriting." The document was offered for identification, but not in evidence. When the case was being argued before the master, for the close of all testimony, counsel for appellant attempted to have this letter admitted,

and the master sustained the objection of the appellee. Later the tender was renewed before the chancellor, and he too declined to consider the missive. Lone excuse given for not offering the evidence in the regular course of the trial was inadvertence of counsel. Considering the reason given for failure to offer the item at the proper time, the unsatisfactory nature of the identification, the view of the master that even if eventually allowed in evidence the letter would not alter his views on the merits of the case, and the final decision of the chancellor which we shall presume correct, we do not find cause to sustain the appellant's contention in this assignment.

The gist of the last, but one, question which we shall undertake to decide is the lack of allegations of improper conduct on the part of the defendant subsequent to a separation agreement executed by the parties many years before the divorce suit was instituted. This contention presupposes that the agreement itself amounted to condonation of a previously existing cause of divorce. See Hammond v. Hammond, 240 Mass. 182, 132 N.E. 724. We have defined condonation as "the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offending spouse shall thereafter treat the forgiving party with conjugal kindness." Kollar v. Kollar, 155 Fla. 705, 21 So. (2nd) 356.

Before proceeding to an analysis of this agreement we shall observe that a perusal of the record has not led us to the view that the master or the chancellor erred in their evident conclusion that conduct of the appellant prior to the agreement, coupled with her mistreatment of appellee since then, justified a decree in favor of the latter.

In the preamble of the instrument it was expressly stated that the parties had agreed to continue living apart because of "unhappy differences and disputes." It was provided that they should live as if they were unmarried, but that it should not be understood that either was permitted to commit adultery. Contained in the agreement were stipulations that a trust fund be created to yield an income to appellant for life; that the parties should have joint custody of their children; that the income from the trust would be accepted by the appellant "in lieu of all alimony or suit money" which

might eventually be claimed by her in a divorce suit. We have not found in this instrument any evidence that either party pardoned the other or that either recognized any condition that misdeeds of the past would not recur. We have not discovered any of the elements of condonation. They did not agree that old complaints would be forgotten and that they would begin life anew, but on the contrary contracted to continue living apart because experience had shown they could not dwell together in harmony. The situation, as we understand it from this arrangement, reflected an attitude and purpose which were the very antithesis of the one which occurs to us as typical of condonation—that is, where a man and his wife who are estranged agree to resume their true relationship (Greco v. Greco, 2 W. W. Harr., 242, 121 Atl. 666; Crews v. Crews, 130 Fla. 499, 178 So. 139) ; to forget past wrongs or transgressions; to live thereafter in a spirit of forgiveness.

Feeling as we do that no condonation sprang from the agreement, we find it unnecessary to discuss particularly the conduct of the appellee subsequent to the agreement and its efficacy to revive former misbehavior.

The last remaining question, which from the brief seems to be imbedded in others upon which we have remarked, is the sufficiency of the testimony as a whole to show such misconduct on the part of the appellant as to warrant the decree. We see no purpose in prolonging this opinion to incorporate an account of the rather stormy association of these parties for the period preceding the separation or to detail their feeling toward each other since then. The casual reader would probably find only amusement in a chronicle of their actions and propensities, and certainly such a resume would be no contribution of value to the body of the law. We dismiss the subject by observing only that master and chancellor did not go afield when the one recommended that divorce be granted and the other confirmed his finding.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.