100 So.2d 167 (1958)
Marcia Gordon FRIEDMAN, Appellant,
v.
Orrie M. FRIEDMAN, Appellee.
Supreme Court of Florida.
February 5, 1958.
Russell A. Rasco, Coral Gables, and Daniel Neal Heller, Miami, for appellant.
Smith & Carter, Miami, for appellee.
*168 THORNAL, Justice.
Appellant Marcia Gordon Friedman seeks reversal of a decree dissolving the bonds of matrimony between the parties and awarding custody of the minor child of the parties to the appellee Orrie M. Friedman.
Our conclusion turns on the correctness of the decree with reference to custody of the minor child and on the ruling of the Chancellor decreeing a divorce without specifically adjudicating the equities for and against the parties.
Mrs. Friedman, as plaintiff below, filed her complaint seeking a divorce from the defendant on the ground of extreme cruelty. The defendant-husband answered denying the allegations of the complaint with reference to cruelty and on his part counterclaimed seeking a divorce from his wife on the ground of extreme cruelty. Both parties sought custody of their three-year old son and the wife sought alimony. The Chancellor personally heard all of the witnesses and entered a decree which provided in part "a decree of divorce * * * be and the same is hereby entered, divorcing the parties each from the other," etc. By the final decree the Chancellor also concluded that for the time being the best interests of the minor child required that custody be awarded to the father. He also determined that in view of the substantial monthly income of the wife as related to the husband's ability to pay, he would not grant alimony. Some of the factual aspects will appear hereafter. Being dissatisfied with the final decree, Marcia Friedman appeals.
The primary contentions of the appellant to support reversal are that the factual situation which developed before the Chancellor established her as the proper party to have custody of the small child of tender years. She also contends that the final decree should have specifically determined the equities on the matter of the party entitled to the divorce.
To support the decree, the appellee-husband contends that the Chancellor heard the evidence and had an adequate basis for his conclusions with reference to custody and that in a divorce proceeding it is immaterial whether there is a specific finding as to prevailing equities on the grounds for divorce alleged.
The record reflects that the appellant-wife is a medical doctor. She received her liberal arts degree at Radcliffe College where she was a member of Phi Beta Kappa; she is a graduate of Harvard Medical School and has specialized in psychiatry since 1950. She teaches psychiatry at the University of Miami Medical College and is Director of the Dade County Child Guidance Clinic. The appellee is likewise exceedingly well educated. He holds a Ph. D. degree from McGill University and is Associate Professor of Chemistry on the faculty of Brandeis University, Waltham, Massachusetts. Both parties, therefore, come before the court with exceptional educational backgrounds.
There was considerable testimony with reference to the mother's psychological and psychiatric fitness to continue to enjoy the custody of the minor child. The record is saturated with the opinions of expert psychiatrists on both sides of the problem. Some were of the view that Mrs. Friedman several years before had voluntarily subjected herself to psychiatric treatment and should not under presently existing circumstances be burdened with the responsibility of the small boy. Others were definitely of the view that Mrs. Freidman is an exceedingly competent person and as reflected by her professional standing was exceptionally well qualified to have the custody of the child. Under such circumstances the Chancellor in the first instance was charged with the responsibility of reconciling the conflicts and evaluating the testimony in the light of what appeared to be the ultimate best interests of the minor. Having done so, the Chancellor concluded that for the time being the custody of the child should be awarded to the father. In doing so, however, he specifically provided that the parties present themselves together with the *169 child personally before the court between May 1, 1958 and June 15, 1958 in order that he might have an opportunity to re-evaluate the whole situation and make further orders in the premises.
It may be that as individuals we would find it difficult to reconcile the conclusion that the best interests of this child required that he remain with the father in view of the mother's splendid professional training and standing and particularly because of the tender age of the child.
However, there is evidentiary basis in this record for the conclusion that the appellant mother had not been well and that it was to her interest to have further treatment at the time the decree was entered. Although there was positive testimony that such further treatment was not necessary, we cannot say that the Chancellor committed reversible error in apparently concluding that at the time of the hearing the best interests of the child required that he then be placed with his father. Inasmuch as the final decree will have to be reversed on other grounds and the cause returned to the Chancellor, we think that the record sustains the direction which we herewith make with reference to custody of the child. When the cause again goes before the Chancellor for the entry of a proper decree in regard to the divorce as hereafter provided, it is directed that the Chancellor immediately reconsider the matter of the custody of the child in the light of his findings as to entitlement to the divorce and in consideration of any other evidence that the parties may then be able to produce on the subject of proper custody. At that point also we think the Chancellor should consider the established rule that ordinarily the best interests of a young child of tender years are served by the child being placed in the custody of his mother with reasonable privileges of visitation to the father. Shores v. Shores, Fla. 1954, 69 So.2d 312; Teel v. Sapp, Fla. 1951, 53 So.2d 635; Lee v. Lee, Fla. 1950, 43 So.2d 904; Stewart v. Stewart, 156 Fla. 815, 24 So.2d 529. By that time almost a full year will have elapsed since the entry of the final decree on April 22, 1957, and the Chancellor should be in better position to evaluate the mother's condition of health as it relates to the welfare of the child and his ultimate custody.
When by the final decree the Chancellor fixed a date for the parties to reappear before him we do not understand that the mother was thereby precluded from moving for a modification of the custody decree on her own motion. We have the view that by its very nature a custody decree is subject to modification whenever it can be shown that changed conditions so justify.
The other aspect of the appeal which challenges our consideration is the procedural question as to whether a Chancellor in a divorce proceeding should specifically determine the equities in favor of one party or the other on the matter of entitlement to a divorce.
The problem will arise only in those cases where both parties seek a divorce such as in the case before us. It will be recalled that the Chancellor merely "dissolved the bonds of matrimony," without finding the equities prevailing either way and without determining which party had established his or her entitlement to the divorce. In fairness to the Chancellor we should point out that within the confines of our own decisions there appear to be two lines of cases which could lead a trial judge in either direction. It is, therefore, quite understandable that the Chancellor here concluded that he was within the limits of controlling precedents when he found as he did merely dissolving the bonds of matrimony. We think this problem could be of importance in future cases and we, therefore, feel that we should resolve the problem and set the point at rest for the benefit of the Bar and future litigants.
Admittedly, there is a division of authority around the country. In 17 Am.Jur., Divorce and Separation, Sec. 465, p. 574, it is stated generally that it has been held that *170 a divorce decree does not necessarily have to state the party in whose favor it is granted. To support this statement the authors cite several cases from the Supreme Court of Arizona. This does seem to be the rule in Arizona and possibly some other states. Coming to our own prior decisions we encounter Williamson v. Williamson, 153 Fla. 357, 14 So.2d 712, where the Chancellor merely divorced each party from the other. On appeal this court declined to reverse the Chancellor by adhering to the general statement of the proposition that the failure of a Chancellor to make specific findings of fact in an equity suit is not reversible error.
However, we next examine Sahler v. Sahler, 154 Fla. 206, 17 So.2d 105, where this court specifically held that it is incumbent upon the trial Chancellor in a divorce proceeding where both parties claim a right to a divorce to determine from the evidence who is at fault and specifically grant relief to the innocent party.
In Macfadden v. Macfadden, 157 Fla. 477, 26 So.2d 502, we again stated that the final decree in a divorce proceeding such as the one now here should specifically designate the successful party.
We eliminate from our consideration here Knox v. Knox, 159 Fla. 123, 31 So.2d 159, where a variation of the problem was disposed of by a holding that it would not be considered error to fail to designate the successful party if the decree in other aspects clearly shows in whose favor it was entered. The rule in Knox v. Knox, supra, is consistent with the conclusion which we hereafter reach.
After carefully considering the prior decisions we are of the view that the better rule as well as one which provides a more orderly procedure consistent with equitable principles requires that in a divorce proceeding where both parties lay claim to a divorce, it is the responsibility of the Chancellor in the first instance to specifically determine by his final decree the relative equities and designate the party entitled to the divorce and the one to whom it is granted. Consonant with this conclusion, therefore, we recede from anything appearing to the contrary in Williamson v. Williamson, supra, and adhere to the rule on this point as announced in Sahler v. Sahler, supra, and Macfadden v. Macfadden, supra.
We do not now pass on the contentions of the appellant with reference to alimony and suit money inasmuch as the decision on the ultimate question of the divorce might have a direct bearing on these aspects of the final decree. When the Chancellor reconsiders the matter of the divorce in accord with this opinion, he should then likewise reconsider the matter of alimony and suit money in the light of his findings with reference to the divorce and enter a decree accordingly.
For the reasons stated above the decree is reversed and the cause is remanded to the Chancellor for further proceedings consistent herewith.
TERRELL, C.J., and THOMAS, HOBSON and O'CONNELL, JJ., concur.