ALLEN, Judge.
This is an appeal from the final decree, dated June 12, 1957, entered in an action for divorce brought by Lillian H. Mickler against Bart Leland Mickler. The decree, entered after the taking of testimony before the chancellor, granted a divorce to plaintiff, disposed of certain real and personal property owned by the parties, gave custody of the parties’ two minor children to plaintiff with certain visitation rights to defendant, and divided the costs and attorneys’ fees between the parties. Defendant appeals, the parties being referred to herein as they stood before the lower court.
The complaint was based on extreme cruelty and asserted the right of the plaintiff to one-half the.property of the parties and right to the custody of the parties’ two minor children. The answer denied the material allegations of the complaint and alleged the defense of condonation.
The court granted a divorce to the plaintiff, gave to her the custody of the two children with right of visitation to the defendant, and held that title to 1,050 acres of land was held by the parties as an estate by the entirety; that certain mortgages held by the parties were held as an estate by the entirety; that the plaintiff should have a one-half interest in 500 head of cattle, the raising of which was accomplished by the use of the plaintiff’s money; that 3,500 acres of land, which was in the name of the defendant but which had been managed and improved by the use of the plaintiff’s money, should be allocated two-thirds to the defendant, one-third to the plaintiff; that several pieces of heavy earth moving equipment and ranch machinery should remain the property of the defendant; that the defendant be required to pay $150 per month for the support of the children; and that certain other minor relief should be granted to the plaintiff.
The judge of the lower court personally heard the testimony, the taking of which consumed several days of hearings, and the record of which consisted of some 359 pages, together with attached exhibits and depositions. The appendix of the appellant in this court consisted of some 160 pages *159 with an additional appendix by the appellee of 60 pages, and the briefs of counsel totaled about 12S pages. The case was thoroughly argued and briefed by each party involved.
This court has read the testimony in this case, as well as the briefs of the parties. We find from this testimony that there are disputed matters of fact which were within the judicial orbit of the judge of the lower court, and as an appellate court, we accept his determination of facts in the case in absence of a showing of clear error.
The Circuit Judge wrote an opinion, which was filed in the case, and from which the Final Decree was prepared. We quote the following from this opinion:
“This is an action for divorce brought by Plaintiff Wife against Defendant Husband charging extreme cruelty. It appears that Plaintiff, who is a young lady of artistic temperament and whose life prior to her marriage to Defendant had been sheltered, on July 25th, 1949, married Defendant, who appears to be a hard working young man with a background of farming and cattle raising. Following their marriage they moved to a home provided by Defendant on a ranch near Tarpon Springs about one mile from their nearest neighbor. In addition to his cattle ranch, Defendant operated two bull dozers in the business of clearing land.
“Plaintiff contends that Defendant was gone from home much of the time, that he refused to discuss matters of mutual concern with her, that they had little or no social life together, that Defendant showed an undue interest in another young women and that on several occasions, Defendant struck her with his fists and beat her with his belt.
“Plaintiff further contends that during their marriage she advanced to Defendant from her own funds the total sum of approximately $85,000.00.
“All of the testimony was heard by the Court. Following the close of testimony, the Court took the case under advisement and has examined the transcript of testimony consisting of 359 pages, together with many exhibits attached.
“It appears that during a period of approximately five years after their marriage, the Defendant’s business operations were entirely unsuccessful as during that period of time he lost a total of twenty seven thousand dollars ($27,000.00). During that time the burden of maintaining a family, including two children, ages six and four years, born to the union, was borne by Plaintiff from her own funds. Thirty thousand dollars ($30,000.00) advanced by Plaintiff is secured by a mortgage to her brother as trustee, and twenty thousand dollars ($20,000.00) of this sum was used to pay off a loan on Defendant’s land clearing machinery. During this time it appears that Plaintiff was left at their home with the two children much of the time and was given thirty dollars ($30.00) each week by defendant to maintain the home and to provide the necessities of life for herself and the children. If she needed more money, it appeared that the Defendant had instructed her to obtain it from the operator of a filling station, who would advance it against Defendant’s credit.
“Plaintiff testified generally in support of her allegations in the Bill of Complaint and her testimony was corroborated by one witness who testified that after the separation of Plaintiff and Defendant, Defendant admitted to her that he had purchased clothing for a young woman whose family were his friends and who was about to be married. Defendant insisted that the affair was entirely innocent, but admitted that he had not discussed it with his wife. This witness also testified that Defendant admitted to having ‘spanked’ his wife. In his testimony Defendant admitted that he had slapped Plaintiff on several occasions, and sought to justify his actions on the ground that Plaintiff is a high strung *160 person and on each occasion had become hysterical, and that he slapped her only as a means of bringing her out of a state of hysteria. The Defendant also admitted that on one occasion, and as to what he described as a cure for his wife’s hysteria, he folded a wide leather belt ‘and used that on her’.
“Plaintiff further testified that when she realized her marriage to Defendant was in danger, she sought the adviie of a reputable marriage counsellor and that she made an appointment for Defendant to see the •counsellor, but that Defendant refused to keep the appointment. Defendant testified that he was prevented from keeping the appointment by a business commitment.
“Defendant moved for dismissal on the ground that Plaintiff testified on deposition that she and Defendant engaged in sexual intercourse the night before she separated from Defendant and that such act operated to condone any previous misconduct of Defendant. Before the Court, Plaintiff testified that she was not certain about the occurrence of the night before she separated from her husband, and that she did not remember what took place on that evening. When asked by the Court why her answers on deposition differed from her statement in her testimony before the Court, her reply was that at the time her deposition was taken she had never in her •entire life discussed such intimate details of her private life with a strange man and that the question by defendant’s counsel so unnerved her that she did not know what she said. The Court having heard her testimony and observed her while testifying accepted her explanation. The Court feels constrained to observe, however, that if her statement on deposition was true, such act did not operate to condone former acts of cruelty and misconduct without some showing of reconciliation or penitence for past misconduct or hope for better conduct in the future. Fekany v. Fekany [118 Fla. 698], 160 So. 192.
“It is, therefore, the opinion of this Court that the plaintiff has established the ground of extreme cruelty sufficient to entitle her to a divorce from the Defendant, and that the best interest of the two minor children of the parties will be served by granting her their custody with the right of reasonable visitation on the part of the Defendant.”
The defendant offered as a defense the plea of condonation. The testimony shows there was some dispute as to whether or not the single act of intercourse between the parties took place on the last night before the plaintiff left the defendant for her final separation or two nights prior to her departure. There was some testimony on the plaintiff’s part that she did not indulge in this act willingly.
Condonation is an affirmative defense and, of course, must be proved by the party asserting the same. For condonation to be a defense to a divorce action, it must appear that the forgiveness was freely given and was entirely voluntary. Thus, where it is brought about by force, fear or similar act, it does not constitute a defense to the action. See Schouler, Divorce Manual, 1944 Ed., Condonation 156e, page 225. Whether the words, acts or course of conduct of the parties in a particular case constitutes condonation is a question of fact. The burden is on the party asserting condonation as a defense to establish it. See Murray v. Murray, 1951, 38 Wash.2d 269, 229 P.2d 309; Lowe v. Lowe, Mo.App.1950, 229 S.W.2d 7, 14.
In the case of Lowe v. Lowe, supra, the Court, with reference to condonation, said:
“Defendant also contends that most of plaintiff’s complaints were based on defendant’s conduct before they moved away from Brookfield in April 1947, and that by living with him in Gallatin from April to November 1947, she condoned such conduct. However, the record also shows that many of plaintiff’s complaints refer to defendant’s *161 conduct when they lived in Gallatin. Plaintiff’s action is based on a series of wrongs rather than a single act such as adultery. In such a case, mere cohabitation during the period in which the wrongs were committed cannot be considered as condonation, in the sense in which it would be after an act of adultery; especially when, as in this case, the wife is the complaining party and the welfare of a child is involved. Scott v. Scott [239] Mo.App. [953], 192 S.W.2d 668, 667, and cases cited; Bliss v. Bliss, 161 Mo.App. 70, 75, 142 S.W. 1081, 1082; 17 Am.Jur., sec. 210, p. 257; 14 A.L.R. 933; Hilbert v. Hilbert, 168 Md. 364, 177 A. 914, 98 A.L.R. 1353. ‘The patient endurance of ill-treatment is not only no bar to the wife’s complaint, but creates no presumption against its truth.’ Guthrie v. Guthrie, 26 Mo.App. 566, 574.”
The Florida Supreme Court, in the case of Fekany v. Fekany, 1935, 118 Fla. 698, 160 So. 192, 193, said:
“But it is contended by defendant that his conduct to complainant was condoned by her; consequently, this suit can avail nothing. Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness. Williams v. Williams, 23 Fla. 324, 2 So. 768; Wagner v. Wagner, 130 Md. 346, 100 A. 364; Austin v. Austin, 172 Mich. 620, 138 N.W. 215; Ellithorpe v. Ellithorpe (Iowa) 100 N.W. 328.
“In the last-cited case it was held that there could be no condonement of abuse of a wife by her husband when the past was not discussed, and there was no promise of conjugal kindness in the future. There is no showing in this case on the part of defendant of penitence for past conduct or a promise by him of more human conduct in the future. In fact, there is no showing of a reconciliation between them at any time. The cruelty complained of consisted of a series of wrongs running over many years. Cohabitation under such circumstances in the hope of better treatment or a better understanding does not constitute condonation ; neither will the fact that the wife has made repeated efforts to get on with the husband amount to condonation. 19 C.J. 86.”
From the above citations, we conclude that the defense of condonation interposed by the defendant was one of fact and, therefore, the decision of the trial judge will be upheld by this court.
Decree affirmed.
KANNER, C. J., and SHANNON, J., concur.