179 So.2d 592 (1965)
John P. WILKERSON, Appellant, Cross-Appellee,
v.
Sarah M. WILKERSON, Appellee, Cross-Appellant.
No. 4740.
District Court of Appeal of Florida. Second District.
October 14, 1965.
Rehearing Denied November 17, 1965.
*593 Willard Ayres, of Green, Ayres, Swigert & Cluster, Ocala and Ralph R. Quillian, Hollywood, for appellant, cross-appellee.
Alan G. Grant, Jr., Orlando and P.B. Howell, Jr., Leesburg, for appellee, cross-appellant.
SHANNON, Acting Chief Judge.
This is an appeal and cross-appeal from a final decree of divorce. The husband was the plaintiff below and the wife the defendant-counterclaimant. The chancelor found the equities to be with the husband and awarded him the divorce, along with the custody of the four minor children *594 of the parties. From the final decree both parties have appealed. Although the husband was apparently victorious, he challenges portions of the decree and is the appellant here. The wife is also dissatisfied, and is the cross-appellant.
The proceedings in this action were commenced in July, 1961, when the husband filed suit for divorce on the grounds of extreme cruelty. Subsequently, the wife answered, denying the allegations of the complaint and in turn counterclaiming for divorce, also on the grounds of cruelty. In addition, both parties sought permanent custody of their four minor children. The husband's complaint prayed that the court would order the jointly owned property of the parties to be conveyed to him. The wife, on the other hand, asked for suit money, alimony and a property settlement, including a disposition of jointly held property. The litigation in the lower court lasted more than two years, culminating in the final decree of divorce entered December 5, 1963.
The decree contained the chancellor's findings on the issues presented. We can summarize the portions relevant to this appeal as follows:
1. That the equities were with the plaintiff, cross-defendant, John P. Wilkerson, and the material allegations in his complaint and amendment to his complaint were established.
2. That there were 204 shares of common stock in the Xerox Corporation owned in the joint names of the plaintiff and the defendant until their transfer to the plaintiff in January, 1963, as a purported property settlement to him from the defendant. Such transfer was set aside for the reason that it was made during the pendency of the suit and was void.
3. That title to all real estate and stocks taken in the name of plaintiff and defendant during the period of their marriage, previously owned by them as an estate by the entirety, would be owned jointly by them, including the 204 shares of Xerox stock.
4. That the plaintiff should account to the defendant for all stock dividends received by him on all stocks owned jointly by these parties since the date of their last separation on January 5, 1963, including the 204 shares of Xerox stock, and pay her promptly one-half thereof.
5. That with respect to the substantial property of these parties, especially the 204 shares of Xerox stock claimed to be owned solely by the plaintiff, which stock is worth approximately $70,000.00, the attorneys for the respective parties had rendered invaluable services on behalf of their respective clients, and accordingly the chancellor found that there was an implied, if not an express, agreement between these parties and their counsel to pay a reasonable attorney fee based upon the amount of time expended by the attorneys; and the chancellor found that a reasonable compensation for the attorney for the plaintiff for his services in regard to the stock was $7,500.00, to be paid from the proceeds of the sale of plaintiff's one-half of the shares thereof; and the chancellor further found that a reasonable compensation for the attorneys for the defendant for their services in connection with the stock was also $7,500.00, to be paid from the proceeds of the sale of the defendant's one-half of the shares of said stock.
6. That in addition to the above compensation allowed to the attorneys for the defendant the chancellor found the sum of $2,500.00 to be a fair, just and reasonable fee for other services to the defendant.
Based on these findings the chancellor, in his decree, ordered the following: 1) He gave a final and absolute decree of divorce to the plaintiff, John P. Wilkerson. 2) He awarded to the plaintiff the absolute and exclusive care, custody and control of the four minor children of said parties, with specific visitation rights to the wife. 3) He ordered all stocks, goods, chattels and personal property of every kind and nature *595 whatsoever, previously owned in the joint names of the parties, to be owned by them in equal shares. 4) He ordered the plaintiff, John P. Wilkerson, to transfer, convey and deliver to the defendant equal shares of their joint property. 5) He ordered the plaintiff to pay to the wife's attorneys the sum of $2,500.00, as reasonable attorneys' fees, and to also pay all the costs of the proceedings. 6) The chancellor decreed that the attorney of record for plaintiff be granted a specific equitable lien upon the plaintiff's shares of the 204 shares of Xerox stock up to and including the sum of $7,500.00 for his services to the plaintiff.
To shed some light on the ensuing discussion, we believe it may be helpful to outline some of the circumstances surrounding this bitterly contested suit.
John and Sarah Wilkerson were married in 1950. The husband is a practicing attorney in Eustis, Florida, and the wife is a well-educated woman, holding both bachelor's and master's degrees. The parties have four minor children, whose ages on the date of the divorce decree ranged from eleven to three years. The parties separated for the first time in June, 1961, following a period of considerable acrimony between them. Shortly thereafter, in July, 1961, the husband instituted this suit for divorce and the wife counterclaimed, both alleging acts of cruelty by the other. Temporary custody of the children was awarded to the husband by the chancellor. In September, 1962, the wife returned home and an apparent reconciliation was effected, as a part of which the wife supposedly agreed to convey to the husband her share of certain property held jointly by the parties. The only property actually transferred was her share in 204 shares of Xerox stock, in exchange for a promise by the husband to forgive her for any prior misconduct. The resumption of marital relations lasted about four months, and in January, 1963, the final separation took place.
We have carefully studied the record in this case, which includes a thirteen hundred page transcript of testimony. The evidence as a whole is conflicting and irreconcilable on almost all material points. When confronted with a situation of this nature an appellate court must accord wide latitude and discretion to the chancellor, who had an opportunity to hear and evaluate all the evidence firsthand. We are impressed, however, by several aspects of this case which we feel are worthy of mention, even though they will not effect the force we intend to give the chancellor's decree.
In the first place, we do not wish to have our affirmance of any portion of the decree construed as an endorsement of the husband's charges against the wife's character. These allegations, against which a defense was almost impossible, appear to have originally been circulated in the community by the husband. Moreover, when traced down on cross-examination, all the witnesses' knowledge of the wife's alleged improprieties was shown to have come from the husband's lips. Even if these accusations were in fact well founded, the husband would not have been justified in deliberately spreading these rumors and innuendos.
Secondly, this court is amazed at the disparity between two financial statements made by the husband only four months apart. The first, given to the State Comptroller for the purpose of applying for authorization to organize a bank, shows the husband's net worth to be $224,928.30; while the second, which was offered into evidence to show his ability to support his wife, shows a net worth of only $46,839.06.
Third, we are appalled at the evidence, corroborated by others, that the husband resorted to physical violence against his wife on several occasions.
We now turn to the arguments advanced in the court by the parties. In his appeal from the decree, the husband argues four points, which we can state as follows: 1) That the chancellor abused his discretion in *596 allowing visitation rights to the wife for fifteen days each Summer, one weekend each month, and seven days during the Christmas holidays, all on forty-eight hours' notice to the husband. 2) That the chancellor erred in taxing against the husband the wife's attorney fees as well as all costs of the proceedings. 3) That the chancellor erred in ordering the division of all personal property held jointly by the husband and wife, and in setting aside the prior transfer from the wife to the husband of her share of the Xerox stock. 4) That the chancellor erred in awarding special attorneys' fees of $7,500.00 to counsel for both parties, and in securing the payment of such fees by imposing equitable liens against the Xerox stock.
In her cross-appeal, the wife argues two points: 1) That the chancellor erred in awarding custody of the children to the husband because there was no showing that the wife was unfit. 2) That the chancellor erred in finding the equities were with the husband, because any misconduct on the wife's part occurring before the temporary reconciliation in September, 1962, was condoned when the parties resumed cohabitation at that time, and the husband failed to prove any new acts of misconduct by the wife.
We will discuss these points in order, taking up those raised by the husband first.
In regard to the husband's first point, concerning visitation rights to the wife, we merely observe that in the brief filed on behalf of the wife, she offers to have the period of advance notice extended from two to seven days and to have a definite fifteen days for the Summer visitation period set. We will therefore affirm the chancellor's order respecting visitation rights, but on remand allow whatever modification the chancellor may find appropriate in view of the proposal mentioned above.
The husband's second point presents for our review the appropriateness of the chancellor's order directing the husband to pay $2,500.00 attorney fees for the wife in addition to all court costs.
Fla. Stat., Sec. 65.07, F.S.A., provides, in part, that:
"* * * [I]f a wife defendant in any suit for divorce shall in her answer, or by petition, claim alimony or suit money, and the answer or petition shall seem well founded, the court shall allow a reasonable sum therefor."
The wife prayed for "full suit money and attorneys' fees" in her answer, thereby satisfying the statutory pleading requirements. The court costs are included in the term "suit money." Orr, for Use and Benefit of Walton v. Orr, 1939, 141 Fla. 112, 192 So. 466.
The husband argues, however, that where a wife has independent means, she must pay her own attorneys' fees. This contention is a misinterpretation of the law, which really is that the award of suit money rests within the discretion of the chancellor. Markland v. Markland, 1945, 155 Fla. 629, 21 So.2d 145.
Squarely in point with the situation here presented is Turney v. Turney, Fla.App. 3, 1963, 149 So.2d 83, in which the husband sued the wife for divorce with the wife answering and counterclaiming for a divorce. A property settlement reached during the suit showed that the husband was worth $880,000.00 with an annual income of $25,000.00, while the wife was worth $460,000.00 with a $10,000.00 annual income. The husband withdrew his complaint and the wife was granted a divorce in a decree fixing the wife's attorneys' fees at $9,600.00, and ordering the husband to pay two-thirds of that sum. The court affirmed the chancellor, in the following language with which we agree:
"Appellant argues that it is essential that the wife show need, and inability to pay attorney fees, in order to justify requiring the husband to pay such fees. The contention lacks merit. The cases relied on by appellant stand for the proposition that it was not an abuse of discretion for a trial court to refuse to allow attorney fees to a wife who was able to pay them. Those cases are not to be regarded as authority for the proposition that it would be an abuse of discretion to allow attorney fees to such a wife who could pay them, where she sues or defends a divorce suit in good faith against a husband who is also fully able to pay. * * *"
*597 The Turney decision was followed in Arrington v. Arrington, Fla.App. 3, 1963, 150 So.2d 473, in which the question also was whether it was within the chancellor's discretion to award attorney fees to a wife who had independent means. The court said that the question has been "authoritatively settled" by Turney and affirmed the chancellor's order requiring the husband to pay.
Therefore, we find that even though the wife here may have had some means (although from the record it is not clear that she did), we hold that the chancellor could properly require the husband to pay her suit money, there being ample evidence of the husband's ability to pay.
The husband's third point really contains two separate contentions. First, it is claimed that the chancellor improperly decreed a property settlement; and second, that he had no authority to set aside the transfer of the Xerox stock from the wife to the husband.
We find that the first of these contentions is without merit because the effect of the decree, aside from voiding the transfer of the stock, is to declare the parties to be tenants in common of the property they formerly owned as an estate by the entirety. This result was not only proper, but would have been automatic upon the granting of the divorce. Fla. Stat., Sec. 689.15, F.S.A. The record supports the chancellor's conclusion that the husband did not have such a special equity in the jointly owned property to entitle him to full ownership upon divorce. See Gonzalez v. Gonzalez, Fla.App. 3, 1963, 156 So.2d 206.
The second contention made by the husband, regarding the setting aside of the transfer of Xerox stock by the wife in which the ownership was changed from tenancy by the entirety to full title in the husband, presents a more difficult problem. The chancellor found this transfer to be tainted with fraud and void because the wife received no consideration in return for giving up her share of this valuable asset. We have found no Florida case directly in point, but believe that the controlling rationale was set forth by our Supreme Court in Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17, in which the question was whether full disclosure by a husband of his financial condition was essential to the validity of an antenuptial agreement. The Supreme Court reversed the Third District, which had held that full disclosure was not necessary if the woman knew, or should have known, of the extent of the husband's assets. The Supreme Court noted the similarity between separation and antenuptial agreements, and set forth some guidelines for determining their validity:
"In weighing the fairness and reasonableness of the provisions for the wife the courts will consider the relative situation of the parties, their respective ages, health and experience, their respective properties, their family ties and connection, the wife's needs and such factors as tend to show whether the agreement was understandingly made." 143 So.2d at 20.
The court also noted that:
"Ordinarily the burden of proof of the invalidity of a prenuptial contract is on the wife alleging it but if, on its face, the contract is unreasonable a presumption of concealment arises, the burden shifts, and it is incumbent upon the husband to prove validity." 143 So.2d at 20.
Admittedly, the Del Vecchio situation is not identical with the one now before us. However, we find that it stands for the *598 proposition that if a transfer made in contemplation of marriage, separation or reconciliation is on its face unreasonable in respect to the woman, then the man has the burden of establishing its validity.
We note that in the transfer now under examination, the husband was an attorney, possessing superior knowledge and skill; that the wife received nothing tangible in return for the relinquishment of her rights in very valuable stock; that during the time the transfer occurred the current lawsuit was pending; and that the only possible "consideration," forgiving past misconduct, had failed. On its face this transfer is unreasonable and we hold that the chancellor could have properly found that the husband failed to sustain his burden of proving its validity. Del Vecchio v. Del Vecchio, supra; Weeks v. Weeks, 1940, 143 Fla. 686, 197 So. 393. Cf. Allen v. Allen, Fla.App. 2, 1960, 123 So.2d 355; Fritz v. Fernandez, 1903, 45 Fla. 318, 34 So. 315.
We note in passing that the effect of the decree should not be to partition property formerly owned as a tenancy by the entirety, but should merely change the form of joint ownership to a tenancy in common. Fla. Stat., Sec. 689.15, F.S.A. From portions of the order it appears that the chancellor may have divided the Xerox stock between the parties so as to give each the absolute ownership of one-half of the shares rather than decreeing them as owners of all the shares as tenants in common. A chancellor in a divorce action cannot partition property owned as a tenancy by the entirety unless the pleadings pray for partition in accordance with Fla. Stat., Secs. 66.01-66.09, F.S.A. See Latta v. Latta, Fla. App.3, 1960, 121 So.2d 42; and Boles v. Boles, Fla. 1952, 59 So.2d 871. The wife in her answer and counterclaim prayed for a division of the jointly owned property, but this is not equivalent to a prayer for partition. Boles v. Boles, supra.
In regard to the husband's final point that it was error for the chancellor to award special attorney fees and equitable liens to counsel for both parties for recovering the interest of each in the Xerox stock, we will be concerned with only the fee and lien awarded to the husband's attorney. We have previously held that the wife had a right to a portion of the Xerox stock and since she has not questioned the $7,500.00 fee to her attorneys, we have only to consider the chancellor's awarding of the fee and lien to the husband's attorney, which is made payable out of his share of the Xerox stock. A search for authority on this point does not reveal any specific authority for the chancellor to set such fee for the husband's attorney. There is authority for the imposition of an equitable lien, but the existence and terms of a contract must first be established before the fees are fixed. Therefore, it is apparent that the chancellor's setting of a fee was improper and imposition of a lien premature. Lamoureux v. Lamoureux, Fla. 1951, 59 So.2d 9. We reverse that portion of the decree, as it relates to the husband's attorney.
We will now take up the points presented on cross-appeal by the wife.
The first is that the chancellor erred in awarding custody of the children to the husband.
It is clearly the law in Florida that when both parents are fit, the custody of young children should be awarded to the mother. E.g., Kelly v. Kelly, Fla.App. 2, 1964, 163 So.2d 498; and Teel v. Sapp, Fla. 1951, 53 So.2d 635. This rule was established by the Florida Supreme Court in Fields v. Fields, 1940, 143 Fla. 886, 197 So. 530, in which the court said that custody should go to the mother "other things being equal." Implicit in this rule is the corollary that a father may be awarded custody if other things are not equal.
Florida courts have affirmed a chancellor's award of custody to the father in several cases in which the mother was found to be unfit.
*599 In Bennett v. Bennett, Fla.App.2, 1962, 146 So.2d 588, 591, this court, in affirming the decree giving custody to the husband, said: "Where there is a history or continued pattern of parental irresponsibility on the part of the mother, the chancellor may be justified in awarding custody of the minor children to the father."
In Koones v. Koones, Fla.App.2, 1963, 149 So.2d 88, the chancellor awarded custody to the father and the court affirmed. The record showed the evidence of the mother's fitness to be conflicting. It was stated that: "Such conflicts are required to be determined by the trial judge and an appellate court does not weigh the testimony of the witnesses." Koones, supra, at 88.
In Friedman v. Friedman, Fla. 1958, 100 So.2d 167, the chancellor awarded custody of a three year old son to the husband. The mother in that case was a medical doctor, graduate of both Harvard Medical School and Radcliffe College, a Phi Beta Kappa, a specialist in psychiatry teaching at the University of Miami, and a director of the Dade County Child Guidance Clinic. Despite these qualifications the Supreme Court did not feel that it had enough evidence to reverse the chancellor's finding on the custody issue.
The wife in this case has argued that the chancellor failed to make a specific finding that she was unfit and therefore it was error not to award her custody of the children.
The Third District's opinion in Tompkins v. Tompkins, Fla.App.3, 1962, 145 So.2d 769, answers this contention. In that case the chancellor awarded custody to the husband although he did not make a specific finding that the wife was unfit. The court affirmed, saying: "Although the chancellor did not make a specific finding as to the unfitness of the mother, it is apparent [in his award of custody to the father of the 3 minor children * * *] that he found she was an unfit person to have their care, custody and control * * *." Tompkins, supra, at 769.
In regard to the present case, there is conflicting evidence as to the fitness of the wife. Despite her splendid education, experience and reputation in the community, the chancellor did not see fit to award her the children. He therefore must have believed the combined testimony of her husband, father, stepmother, and others, that she was absent from home for frequent and extensive lengths of time, did not properly care for the children, and largely left their care to maids. The entire body of evidence on the issue of custody of the children is conflicting and irreconcilable, and we cannot say that the chancellor has erred in awarding custody to the husband.
In addition, the chancellor has retained jurisdiction and it may be possible for the issue of the children's custody to be reevaluated later. See Tompkins v. Tompkins, supra; Friedman v. Friedman, supra; and Sugg v. Sugg, Fla.App.3, 1961, 134 So.2d 284 (concurring opinion).
The last issue on cross-appeal is the wife's contention that any acts of cruelty prior to the reconciliation in September, 1962, were condoned by the husband, and could not have been used as grounds for divorce. The Florida Supreme Court has set out the general principles regarding condonation in Kollar v. Kollar, 1945, 155 Fla. 705, 21 So.2d 356. For our present purpose we need quote only a small passage from that opinion:
"[A] condoned matrimonial offense may be revived by the subsequent commission of other marital offenses so as to permit a divorce on the ground of all offenses whether committed prior or subsequent to the condonation."
Kollar, supra, at 708; 21 So.2d at 357.
In addition, condonation is an affirmative defense which the party asserting it must prove, Mickler v. Mickler, Fla.App.2, 1958, 101 So.2d 157; and since it is a question of fact, the chancellor's finding on the issue *600 comes to an appellate court clothed in a presumption of correctness, Katz v. Katz, Fla. App.3, 1964, 159 So.2d 241.
The record in this case contains sufficient evidence of cruelty on the part of the wife to support the chancellor's finding that the equities were with the husband. We do not wish to set forth in detail the testimony upon which the finding rests, and need only mention that there was sufficient corroborated evidence to show that the wife, by her repeated absences from home and apparent disregard for her husband's feelings, committed sufficient acts of cruelty to entitle the husband to a divorce. The record contains evidence that these acts were committed both before and after the purported reconciliation, and accordingly, the chancellor could have properly found the defense of condonation was not established.
We therefore hold that the wife has failed to demonstrate reversible error on the part of the chancellor and we affirm those portions of the decree from which cross-appeal has been taken. Slimer v. Slimer, Fla.App.2, 1959, 112 So.2d 581.
In summary, we hold that the decree of the lower court is affirmed except for the following specific portions of the order which we reverse and remand for appropriate action.
Those portions of the decree contained in decretal paragraphs 5, 8 and 11, which divide jointly owned property are reversed, and the parties are to be decreed as tenants in common of all the property, including the total amount of shares of Xerox stock, in compliance with Fla. Stat., Sec. 689.15, F.S.A.
We reverse the chancellor's finding that a contract existed between the husband and his attorney for the payment of $7,500.00 in attorney's fees, there being no evidence to support this finding. Consequently, decretal paragraph 9, imposing a lien on the husband's stock in favor of his attorney is reversed.
We remand, without reversing, those portions of the decree setting out the times of visitation given to the wife. The chancellor is directed to modify the visitation rights in accordance with the offer made by the wife to extend the period of advance notice from two to seven days and to have a definite fifteen day summer visitation period set. The chancellor may exercise his discretion in determining the period during which the wife may exercise her summer visitation rights.
In addition, we direct the chancellor to amend his decree, upon a proper hearing, to provide for payments by the husband to the wife of a reasonable and sufficient sum for the maintenance and care of the children during the periods when they are with their mother; and to designate the time when such payments shall be made.
In all other respects we affirm the decree, including that provision in which the chancellor retains jurisdiction over the cause for the purpose of entering such further orders as the welfare of the minor children may dictate.
Affirmed in part and reversed in part.
SMITH and KANNER (Ret.), JJ., concur.