ALLEN, Acting Chief Judge.
Petitioner, Walter A. Hoffman, Sr., defendant below, has filed the instant petition seeking review of an order of the Florida Real Estate Commission revoking his real estate broker’s registration.
Petitioner was charged by respondents for having violated Chapter 475, Florida Statutes, F.S.A., in particular § 475.25, for certain acts committed by him in connection with the sale of a trailer park, in which transaction he was involved as the selling broker. Such acts were alleged to amount to, inter alia, breach of trust, concealment, false pretense, fraud and dishonest dealing in violation of said § 475.25, F.S.
Actually, two transactions for the sale of the same property are. involved. The first sale fell through upon the breach by the purchasers of their agreement to purchase. The second sale was consummated.
Testimony was taken before a duly appointed examiner who was not authorized to and did not make findings of fact. The transcript of the testimony taken before the examiner was submitted to the Commission which made formal findings on the basis thereof and entered the order of which review is sought.
It is our view that the findings of the Commission and the order entered thereon do not have sufficient foundation in the record.
Regarding the first transaction which was not completed, the record shows that the purchasers made a $20,000 deposit evidenced by a negotiable note for $19,600 and a check for $400.00. Payment was stopped on the check. The note was made payable to petitioner’s escrow account. With the knowledge of the sellers, petitioner, on the advice of counsel, attempted to coerce the breaching purchasers to perform on the contract by putting the note into the hands of a holder in due course. Petitioner, however, endorsed the note to one Galloway for $5,000 but gave the $5,-000 back to Galloway almost immediately^ The note was then placed with the attof' ney who then purportedly represented him-self by mail to the makers in New York as agent for collection on behalf of Galloway. The testimony of said attorney is not clear as to exactly what methods of collection were employed. There is in the record a letter from the attorney to the purchasers stating that he had been retained by the sellers to ascertain their intentions regarding their agreement to purchase the trailer court. It does not appear that the note was ever negotiated to an innocent purchaser for value or that such a negotiation was contemplated. The purchasers (makers of the note) did not testify at the hearing or by deposition. Nor are any other letters written to them by the attorney included in the record. For all that the record shows, enforcement of the contract was the only thing established as having been sought against the purchasers by petitioner. Any conclusion that petitioner, by attempting to enforce the contract and/or collect on the note as just described, was guilty of misappropriating escrowed funds would be inconsistent, under the circumstances, with the Commission’s express finding that the employment of the attorney and its purpose were not unknown to the sellers.
Other purchasers having loomed on the horizon, efforts to realize something out of the aforedescribed abortive transaction ceased. The second deal went through, but not without complications. At the closing a misunderstanding came to light as to who, the sellers or purchasers, were to assume an existing indebtedness of $5,-100 on a certain trailer owned by the sellers. A compromise was reached with the sellers, the purchasers, and petitioner each agreeing to assume $1,700 of said indebtedness. Petitioner was to meet his part of this obligation by deducting $1,700 from his commission to be earned on the sale. How ■ ever, in lieu of receiving his commission in cash, petitioner had to agree to accept *778 a mortgage which was to be assigned by the purchasers to the sellers as part of the purchase price of the trailer court. Said mortgage, which is not a part of the record, was valued on the face of the sale agreement at $12,171.25. It was contemplated that petitioner would sell this mortgage, deduct his commission and pay the balance to the sellers. Petitioner was successful in selling this mortgage but the record does not disclose for how much. The record indicates that petitioner’s commission after the $1700.00 reduction was to he $6800.00. Had the mortgage sold for its assumed face value, $12,171.25, the sellers would have been entitled to receive $5,371.-25. They testified that they were “forced” to settle with petitioner for $4000.00. The Commission concluded that by such settlement petitioner was able to recover most of the $1700.00 of his commission that he had agreed to give up to save the transaction and that he had never intended to give it up in the first place. As aforesaid, we are not informed as to how much the mortgage sold for. Assuming it was discounted, the record does not show that the parties gave any thought to who, the sellers or petitioner, should bear the risk of any discount loss; i. e., whether if there was a discount loss, it was to be deducted from petitioner’s $6800.00 commission or from the $5,371.25 to which the sellers would be entitled based on a sale of the mortgage for face value. The record fails to establish that petitioner wilfully withheld from the sellers any money to which they were entitled from the sale of the mortgage over and above $4000.00. Said amount may well have represented the difference between the selling price of the mortgage and petitioner’s commission. More confusion on this facet of the case is created by testimony of the sellers that the mortgage was not worth whatever face value showed upon it in that payments on it had been advanced two years hence from the date of its assignment. Petitioner was not shown to have any knowledge of said advanced payments.
At the closing which occurred on November 24, 1959, the sellers prevailed upon petitioner to give them a note for $3500.00, due and payable January 20, 1960. The note was drawn by petitioner as president of Hoffman Realty, Inc., a paper corporation with no assets. Petitioner testified that the parties agreed orally that payment on the note was not expected until he disposed of the mortgage. The Commission rejected this testimony. Demand was made on January 20, 1960, but the note was not paid. The sellers testified that the aforesaid $4000.00 settlement was not achieved until they started a lawsuit. The mortgage was apparently not sold until after January 20, 1960, but was sold before settlement. The sellers testified that they only accepted the $4000.00 settlement because petitioner, as a corporation, was insolvent. The Commission concluded that having evidenced his promise to pay $3500.00 by a corporate promissory note of no value, and having failed to pay it on the due date rendered petitioner guilty of dishonest dealing and breach of trust. Failing to pay on the due date alone does not demonstrate malafideness. Moreover, a note need not be drawn oh sufficient funds to be valid. The fact that an insolvent corporation was maker is thus of no consequence, especially since the note was ultimately paid as part of the $4000.00 settlement. If there was any fraud in connection with the corporation’s insolvency, the record does not show that the petitioner was less insolvent as a natural person than he was as a corporation, or that the sellers would have been able to realize more in settlement had there been no corporation in the picture.
In revoking petitioner’s real estate broker’s registration, the Commission made the following findings:
“ * * * Defendant Walter A. Hoffman, Sr., in negotiating the Georges’ note to Galloway as aforesaid and in obtaining the Reids’ consent to sell their court to the de Beauclairs on his promise to take the de Beauclairs’ mortgage and pay them the difference *779 between it and his commission and promising to pay $3,500.00 of it on January 20, 1960, evidencing the promise by a corporate promissory note of no value, without carrying out any of the promises, is guilty of breach of trust, dishonest dealing, trick, scheme or device, all in violation of Subsection 475.-25(1) (a), Florida Statutes, and the fact that, as defendant Hoffman points out, his settlement with the Reids resulted only in the recovery of the amount he had originally given up to get the matter closed shows to us that defendant Hoffman never did have any intention of paying the full difference between the de Beauclairs’ mortgage and his commission to the Reids. By reason of all the foregoing, defendant Hoffman is therefore guilty of a course of conduct which shows that he is so dishonest and untruthful that transactions and rights of those with whom he may sustain a confidential relation may not safely be entrusted to him in violation of Subsection 475.25(3), Florida Statutes, and his registration as a real estate broker ought to be revoked.”
As noted earlier in this opinion, the transcript of testimony on which the above findings are based was submitted to the Commission by the examiner who simply conducted the hearing but made no findings of fact. Accordingly, the findings of the Commission are not presumptively valid as they would otherwise be had the administrative fact finder heard the testimony and observed the demeanor of witnesses, or, in other words, had the hearer of fact been the finder of fact. This court is just as capable, under the circumstances, to evaluate the cold record as was the Commission. Graham v. Florida Real Estate Commission, Fla.App.1960, 119 So.2d 88; Condermann v. Potter, Fla.App. 1961, 126 So.2d 743; cf. Harmon v. Harmon, Fla.1949, 40 So.2d 209; Fry v. Benson, Fla.App.1961, 132 So.2d 617; Ward v. Florida Real Estate Commission, Fla.App.1962, 141 So.2d 811.
 We therefore hold that the findings of the Commission do not have a sufficient basis in the testimony and other evidence appearing in the record. Such findings are inconsistent with the probative force of the evidence adduced. All this court has before it is evidence, conflicting within itself, of a badly handled real estate transaction or series of transactions, coupled with considerable hard feeling and numerous misunderstandings. None of this was explored fully by either party but the burden to do so was on the respondents.
Writ of certiorari is hereby granted and the Commission’s order of revocation under review is accordingly quashed.
Reversed.
KANNÉR and SMITH, JJ., concur.