SHANNON, Judge.
The appellant, who was the defendant below, appeals from a final decree in a divorce action brought against her by her husband, Raymond A. Kelly, Jr., which final decree awarded the appellant a divorce on her counterclaim, but gave the custody of the two minor children to the paternal grandparents.
The parties hereto are comparatively young and have two children, a son born on July 21, 1956, who is now seven years of age, and a daughter born on December 17, 1960, who is now three years of age. According to the record, the wife left her husband, who was then a student at the University of Florida in Gainesville, and went for a visit to her mother’s home in Mississippi, taking with her the two minor children. She then telephoned her husband, informing him that she did not intend to return. She petitioned for, and received, a custody decree from a Mississippi court, but we are not at this time concerned with that decree. Thereafter, the husband, with *499 the knowledge of his mother, went to Mississippi and took the children without the consent of the wife, and brought them back and placed them in the home of their paternal grandparents in Tampa, Florida. He then filed his complaint based upon the ground of extreme cruelty. The wife counterclaimed, also asking for a divorce on the ground of extreme cruelty, and sought the custody of the children. The chancellor in his temporary decree placed the children with the parents of the husband and ordered that the plaintiff pay the defendant the sum of $60.00 per month as temporary alimony. Upon final decree, the chancellor granted the divorce to the wife but awarded the complete care, custody and control of the two minor children to their paternal grandparents, Raymond A. Kelly and Mayme Swain Kelly, giving the wife liberal rights of visitation. It was also provided that the wife should get $75.00 per month as permanent alimony.
The final decree is silent as to the fitness or the lack of fitness of the mother to have the custody of her children; and we feel that the record shows no lack of fitness.
It appears from the record that both of the children would be better off financially if left in the home of their grandparents, but that is only one of the factors to be taken into consideration. The record shows that a considerable amount of testimony was taken on behalf of the husband, which included the testimony of many of his relatives. The record shows a conflict of testimony that can be expected in a case of this sort. Yet the chancellor found that the wife was entitled to a divorce and made no finding that she was not a fit person to have custody of her children. The record also shows that the wife’s morality was not questioned in any way. In Fields v. Fields, 1940, 143 Fla. 886, 197 So. 530, we have an almost identical situation. In that case the chancellor entered a decree awarding the care and custody of three small children of the parties, then aged three, five and seven years, to the husband’s father, primarily for the reason that he was well off financially and could give the children a better home than either the wife or the husband. In reversing that case, Justice Thomas, who wrote the opinion for the court, said, in part:
“The financial worth of persons, other than the parents, to whom children may be awarded is important only when it appears that the parents themselves are unable to provide the necessities of life and prevent their children from becoming the objects of charity and a charge upon the community.
* * * * * *
“In this case the income of the husband’s father exceeds that of the son or the son’s divorced wife, therefore, on that score alone he could give the children a better home than either of their parents and to that extent the welfare of his charges would be enhanced.”
A further similarity is noted in the amount of bitterness evinced by the parties, as well' as the court’s findings as to the fitness of the parents:
“Nothing in the record reflects any discredit on the moral character of the grandparents or of the relatives of the wife with whom she is living and where, if the children are awarded her, they will live for the present time. Nor do we find any unusual conduct shown-on the part of the parents save that born of the peculiar bitterness which' develops when the love of one spouse for another turns to hate and which is dispelled or at least becomes dormant when they cease to meet and this misbehavior is not of such degree as would defeat their right to their children.”
The heart of the Fields case, the gist of' which we incorporate herein, is found in this final paragraph from that case:
“One other aspect of this controversy which impels us to the belief that the mother and father should share- *500 the custody, the former for the greater part of the time, is the extreme youth of the children. We incline to the view of the Supreme Court of Alabama that ‘Other things being equal, * * * the mother of infants of tender years (is) best fitted to bestow the motherly affection, care, companionship, and early training suited to their needs.’ Gayle v. Gayle, 220 Ala. 400, 402, 125 So. 638, 639.”
This question of child custody has been before our court on numerous occasions. This opinion would gain nothing by citing a long list of cases holding that, in the absence of special circumstances, the mother should be given the custody of small children, since she is best fitted to bestow the love and care which they require.
The principles by which we are guided in arriving at our decision were succinctly stated by this court in Slimer v. Slimer, Fla.App.1959, 112 So.2d 581. Of the many cases on this point that have been decided since the decision in the Fields case, we need note only the Slimer case and Arons v. Arons, Fla.1957, 94 So.2d 849, and Shepard v. Shepard, Fla.1956, 87 So.2d 807.
 There is still the question of alimony and child support. The husband, at the time of the hearing below, was earning only $60.00 per week “take home pay,” but was living with his parents at little cost. Further, we cannot help but note that he had been earning twice this much as an electrician before he went to college, and that at college he was an “A” student majoring in electrical engineering; he only had a year to go when he dropped out. The wife, prior to the divorce action, was making only $38.41 per week, but gave up her job to come to Tampa for this litigation. In other words, this situation will be difficult to work out to the satisfaction of the parties and in fairness to both. Inasmuch as we are reversing the chancellor’s decree insofar as it awards the custody of the two children to the grandparents, and are awarding the custody to the wife, the chancellor below is at liberty, if he so desires, to take additional testimony as to the financial status of both husband and wife and amend his decree accordingly.
The husband questions the amount of the attorney’s fee allowed to the wife’s attorney. While the amount allowed below does not appear to be on the side of inadequacy, it still is not excessive, and such amount will be allowed to stand.
Reversed and remanded.
SMITH, C. J., and LOPEZ, AQUILINO, Jr., Associate Judge, concur.