188 So.2d 896 (1966)
Eugenia JULIAN, Appellant,
v.
Joe JULIAN, Appellee.
No. 6595.
District Court of Appeal of Florida. Second District.
July 20, 1966.
Carlton & McCown, Tampa, for appellant.
Samuel Feinberg, Tampa, for appellee.
PIERCE, Judge.
This is an appeal by the plaintiff wife in the Court below from a Final Decree of divorce, which awarded: (1) a divorce to the plaintiff, (2) oustody of the minor children to the defendant husband, (3) alimony of $10.00 per week to the plaintiff, and (4) exclusive use and occupancy of the former homeplace of the parties as a place of residence for the defendant and their two minor children.
Plaintiff filed suit against her husband on September 25, 1964 alleging they had been married over fourteen years, of which union there had been born to them two children, a son 13 years of age, who it developed later in the case was somewhat retarded, and a daughter 9 years of age. Averring exemplary conduct on her own part, plaintiff charged her husband with being guilty of extreme cruelty, both mental and physical, toward her during their married life together, alleging many instances in support thereof, down to the date of separation, which was alleged to have been September 19, 1964. Plaintiff prayed for a divorce, permanent care and custody of the two minor children, support and alimony for herself and the children, and attorney's fees. Defendant answered and made general denial of plaintiff's *897 allegations and by way of Counterclaim prayed for divorce himself on the ground of extreme cruelty and asked also for the care and custody of the children. Plaintiff denied the allegations of the Counterclaim by answer thereto.
Testimony upon the issues so joined was taken before a Special Master, pursuant to which the Master made Findings of Fact as follows: (1) residential requirements had been satisfied, (2) plaintiff wife had sustained the allegations of her complaint, and (3) two minor children had been born of the marriage.[1] The Master's pertinent Conclusions of Law were as follows: (1) the Court had jurisdiction of the parties and the subject matter, (2) plaintiff wife was entitled to a divorce from defendant, (3) defendant husband should be awarded custody of the minor children, with plaintiff having privilege of visitation, (4) defendant should have exclusive use of the former homeplace and furniture therein, and (5) plaintiff wife should be granted alimony in the sum of $30.00 per week.
Both parties filed exceptions to the Master's "Conclusions of Law", plaintiff excepting as to custody of the children and occupancy of the former homeplace, and the defendant husband excepting to the provision as to $30.00 per week alimony.
On June 24, 1965 the Chancellor entered Final Decree which (1) approved the "report, findings and recommendations of the special master" except as to the $30.00 per week as alimony, (2) granted a divorce to plaintiff wife, (3) gave the permanent custody of the minor children to the husband, with plaintiff having the "privilege of visiting said children at all reasonable times", (4) awarded defendant the exclusive use and possession of the former homeplace of the parties, together with the furniture therein, (5) allowed alimony to the plaintiff of $10.00 per week, and (6) awarded attorney's fees and Court costs to plaintiff.
The plaintiff wife filed timely notice of appeal to this Court from said Final Decree, assigning as error the provisions thereof granting permanent custody of the minor children to defendant, reducing the alimony to plaintiff to $10.00 per week, and granting exclusive use of the marital home to defendant. We regret having to hold the able Chancellor in error in entering the decree, but feel impelled so to do.
Actually there is only one issue before this Court, namely, granting of permanent custody of the minor children to the father, rather than the mother. This is so because both parties agree that the provision as to occupancy of the homeplace should follow the custody of the children on the theory that the home should be occupied by whoever has the responsibility of the children, and the amount of alimony to plaintiff can be re-examined by the Chancellor when the case comes before him again, as it must, on the general question of support money for the children.
We are convinced that, as between the two parents, and in the light of the entire record, the permanent custody of these two minor children should have been awarded to the mother and not to the father. This is not to say that the father is an unfit person to have the custody of the children. But obviously they both cannot have the custody because they stand divorced from each other; and any attempt to divide permanent custody of minor children is emphatically frowned upon by the Courts.[2] *898 A judicial choice has to be made between either the father or the mother. And the record here lacks sufficient basis to take from the mother the permanent custody of her two children, one a 13 year old, partially retarded boy, and the other a 9 year old little girl.
As hereinbefore observed, the Special Master made no specific finding of fact with reference to the custody of the children or the fitness or unfitness of either parent to have such custody, except the general finding that "[t]he Plaintiff has sustained the allegations of her Complaint". Her complaint alleged that she "is a most fit and proper person to have the care, custody and control of said minor children", and this, taken with numerous allegations of cruelty and abuse from her husband, many of which were alleged to have been in the presence of the children, could have endowed the "general finding" with an inferential persuasiveness that the mother was alone a fit person to have the children's custody. But we can assume for purpose of our disposition, that the Master made no finding of fact, directly or indirectly, with reference to custody.
The Chancellor, in entering his Final Decree, likewise made no specific finding of fact with reference to custody, but merely "Approved, Ratified and Confirmed" the Master's "Report, Findings and Recommendations", which, even discarding the implied finding in plaintiff's favor as aforesaid, would operate only to leave the final decree without any fact-finding support for awarding custody to the defendant father. The Master's "Conclusions of Law" to the effect that "[t]he defendant should be awarded the custody of the minor children" is meaningless because (1) a conclusion of law is not derived from the evidence itself but must find its basis in specific findings of fact, and (2) there is no finding of fact upon which such conclusion of law could rest for support. And such being the case as to both the Master's Report and the Final Decree itself, the legal question at once arises as to what weight, if any, must this Court upon appeal give to the custodial provision of the decree.
It is our view that, as the case comes here, there is no presumption, or at best, only a slight presumption, in favor of the correctness of the custody provision. Where a trial Judge bases his Final Decree upon the written pleadings and transcribed testimony and exhibits, the Appellate Court is in the same position in examining the record as is the Trial Judge, and a presumption as to determination of evidentiary matters is not as strong as when the Judge, as the trier of the facts, personally hears the witnesses. L & S Enterprises, Inc. v. Miami Tile & Terrazzo, Inc., Fla.App. 1963, 148 So.2d 299. Where the Chancellor does not hear the witnesses and acts on the same pleadings and transcribed evidence as is before the Appellate Court, the presumption of correctness of rulings of the Chancellor is slight. West Shore Restaurant Corp. v. Turk, Fla. 1958, 101 So.2d 123. See also to the same effect, Conklin v. Pruitt, Fla. App. 1966, 182 So.2d 644; Mathews v. Kingsley, Fla.App. 1958, 100 So.2d 445; Hoffman v. Condermann, Fla.App. 1962, 146 So.2d 776. The rule is aptly stated by Justice Sebring, speaking for the 2nd District Court in Sconyer v. Scheper, Fla. App. 1960, 119 So.2d 408, as follows:
"It is plain from the record that the trial court has never seen or examined any of the parties to the suit, or the witnesses whose depositions were taken, but has based its decision as to the competency of the plaintiff solely upon typewritten evidence. In these circumstances, the trial court was in no better position to arrive at a correct conclusion as to the competency of the plaintiff and the credibility of the witnesses at the time the summary judgment was entered than is the appellate court on this appeal. Hence, the general rule to the effect that a judgment entered by a trial court on evidence will on appeal be presumed correct until the presumption *899 has been clearly overcome by the appealing party does not obtain to the same degree as it would where the trial court had seen and heard the witnesses testify. Harmon v. Harmon, Fla., 40 So.2d 209; Mathews v. Kingsley, Fla.App., 100 So.2d 445."
Harmon v. Harmon, Fla. 1949, 40 So.2d 209, was a divorce action and is cited in practically all the foregoing cases as authority for the proposition that no real presumption attaches to a Chancellor's independent Findings made only from the cold written pages of a transcribed record.
We turn, therefore, to the record to determine for ourselves what the evidence discloses as to the relative fitness of the parties to have custody of their children. We find the following: Both parents testified in their own behalf. The plaintiff wife made an impressive showing, from the pages of the record, as to her own fitness. She gave abundant proof that she loved the children dearly, that she had taken care of them as a mother should, that she had washed and ironed for them, that she had always dressed and clothed them cleanly and neatly, that she had always seen to their feeding properly, that she had always looked after their physical health, particularly the partly afflicted son, that she had continuously seen to their regular attendance at Sunday School, church and bible school, that she had seen to their getting enough sleep and rest and getting to bed each night on time, and that she had in general conducted herself and done everything that a good mother could or should do to raise her children properly. She recited repeated instances of physical and mental cruelty and abuses on the part of the defendant husband and his continual use of the most opprobrious epithets and appellations toward her in the presence of the children. The defendant himself, while denying his own misconduct, acknowledged that the plaintiff was a good mother. His brief in this Court states that "the Appellant's fitness as a mother is attested to by the Appellee".
Four witnesses testified in behalf of the plaintiff mother, Sam Marotta, Olympia Sizemore, Angie Diez and Dalia Rodriguez. Mr. Marotta testified that the 9 year old daughter of the parties had been a "good student" and seemed to be "well adjusted" at the Tampa Bay Boulevard Elementary School, of which he was principal. Mrs. Sizemore, sister of the mother, testified, referring to the plaintiff, "she has been a good mother. She makes sure that they go to bed on time and that they eat and that they have their meals and their clothes. While they were separated she was still washing and ironing for them and cooking for them right there in the house. By seven-thirty those kids are in bed and have their pajamas on. She wants them in bed at least by eight or eight-thirty"; that they always went to P.T.A. and Sunday School and that "she loves them both. They mean more to her than anything else." Mrs. Diez, a close neighbor of the parties, referring to plaintiff, testified that "if she was a bad mother I wouldn't be here today. She was a very good mother just like I consider myself a good mother", that as a day-by-day neighbor for six years she had never seen plaintiff neglect the children. Mrs. Rodriguez, a neighbor for eight years, just two doors away from the parties, testified the children at all times had been properly fed and clothed, that she had never seen the mother mistreat the children, that "she would prepare her meals. I would see her washing clothes and cleaning before she left for work". Mr. Joe J. Julian, father of the defendant, testified that the two children, particularly the partially retarded boy, would make the plaintiff mother very nervous upon occasions, as they did himself, but admitted that "she treated the children good" and also that "she treated my son (defendant) very good". The 9 year old daughter of the parties, Debbie, testified briefly, her most significant contribution being, when she was asked the question *900 "would you like to live with your mother?" she replied "Yes", but when asked "and you would be happy to live with your father if the Court so tells you to do so and not live with your mother?" she gave no answer. There was testimony by the defendant and his father to the effect that defendant was a good father to the children, and the plaintiff herself did not specifically state the contrary, except as was implicit when she was detailing the abusive conduct and language of defendant toward her in the presence of the children.
The foregoing is a fair, although necessarily brief, summary of all the evidence. We find that it shows abundantly that plaintiff is a proper mother to have custody of her children, and that it refutes even the remotest suggestion that she is unfit to have their custody. The burden of defendant's contention to the contrary is that (1) she went to work about six months before this suit was filed, working irregular hours from time to time, and thus was not continually with the children all the time; and that (2) she left the homeplace a few days after the suit was filed, leaving the children there, and never came back for them.
Her reply to these charges, and in our view it is supported by the record, is that, as to her job at the Supermarket she was forced to go to work to earn additional necessary money for the family to live on, that her working was with her husband's full approval, that she gave him her paycheck each week, that he and his father would frequently bring the children to visit her at the store or to meet her when she got off, and that she had in fact quit her job less than two weeks after she filed this suit and had not worked since. She stated that when she went to work her husband "wasn't making enough and I was tired of borrowing from my neighbors and relatives. I was just tired of borrowing money. One week he would make fifty and another week one hundred and forty, and then he was out of work for six weeks in July. If it wasn't for my check we wouldn't have been eating." She continually reiterated in her testimony that if having custody of her children depended upon her not working, she would not work, that she was "prepared to stay at home twenty-four hours a day to take care of them".
As to her leaving the house, she testified that when she filed the suit he became furious, making all sorts of threats of violence toward her, and that a short while later "I left because he said he was going to kill me * * *. He meant it, he was going to kill me. * * * That's why I run to my mother's." And that when she later tried to get back into the house, "[h]e put a lock on it and his father's got a key and he's got one too. I tried to open the door for my daughter to get clothes and we couldn't get in because there is a big lock on the door. * * * he's got all the latches on the inside of the door closed and he has the two keys for the one door. I got the one key but it won't open because of the latch and the other one he put a lock on the outside." This was not denied.
Since she left home, she had been staying at her mother's home in the immediate neighborhood. No temporary custody order was ever made in the case and final testimony on the merits was taken only a few weeks after suit was filed, so she had not been away from her home or her children very long. It seems as if all parties were just marking time, waiting to get the whole matter of custody settled at one hearing.
In the light of the record before this Court, the custody of the children should be in the mother. And the Florida appellate Court holdings support this view. The controlling cases are Wilkerson v. Wilkerson, Fla.App. 1965, 179 So.2d 592; Bargeon v. Bargeon, Fla.App. 1963, 153 So.2d 10; Kelly v. Kelly, Fla.App. 1964, 163 So.2d 498; Dobbs v. Kelly, Fla. 1949, 39 So.2d 479; *901 Hurst v. Hurst, 1946, 158 Fla. 43, 27 So.2d 749; Teel v. Sapp, Fla. 1951, 53 So.2d 635; and Green v. Green, 1939, 137 Fla. 359, 188 So. 355.
In Wilkerson this Court said, text 179 So.2d 598:
"It is clearly the law in Florida that when both parents are fit, the custody of young children should be awarded to the mother. E.g., Kelly v. Kelly, Fla.App. 2, 1964, 163 So.2d 498; and Teel v. Sapp, Fla. 1951, 53 So.2d 635. This rule was established by the Florida Supreme Court in Fields v. Fields, 1940, 143 Fla. 886, 197 So. 530, in which the court said that custody should go to the mother `other things being equal.' Implicit in this rule is the corollary that a father may be awarded custody if other things are not equal.

"Florida courts have affirmed a chancellor's award of custody to the father in several cases in which the mother was found to be unfit." (Emphasis supplied).
In Bargeon the husband was granted a divorce on the ground of adultery, but the wife was awarded custody of the minor child of the parties. The husband appealed the custody provision of the decree, but this 2nd District Court affirmed, speaking through Associate Judge Harry N. Sandler as follows:
"It is quite evident that the real bone of contention in this instance is the custody of the minor child. In determining the question of the custody of child of divorced parents the welfare of the child is, of course, of paramount consideration. Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749; Bennett v. Bennett, Fla., 73 So.2d 274. Counsel for the defendant husband stress the conduct of the mother of the child prior to this divorce proceeding, which, it is true, is anything but exemplary or commendable. However, we are concerned with the present fitness of the parties for the custody of the child and the Chancellor having found both parties presently fit, having reserved jurisdiction over the custody of the child, because of the tender age of the child in question, approximately two years, the law favors the mother. Stewart v. Stewart, 156 Fla. 815, 24 So.2d 529; Teel v. Sapp, Fla., 53 So.2d 635. In Slimer v. Slimer, Fla.App., 112 So.2d 581, the court said:
`Where husband is granted a divorce, but wife is found to be a fit and proper person to rear children of tender years, she should be awarded custody of the children.'"
In Kelly the Hillsborough County Circuit Court granted the wife a divorce but awarded custody of the minor children to their paternal grandparents. Upon appeal, this Court reversed the custody provision and directed custody to be placed in the mother, observing as follows:
"Upon final decree, the chancellor granted the divorce to the wife but awarded the complete care, custody and control of the two minor children to their paternal grandparents, Raymond A. Kelly and Mayme Swain Kelly, giving the wife liberal rights of visitation. It was also provided that the wife should get $75.00 per month as permanent alimony.
"The final decree is silent as to the fitness or the lack of fitness of the mother to have the custody of her children; and we feel that the record shows no lack of fitness.
"It appears from the record that both of the children would be better off financially if left in the home of their grandparents, but that is only one of the factors to be taken into consideration. The record shows that a considerable amount of testimony was taken on behalf of the husband, which included the testimony of many of his relatives. The record shows a conflict of testimony that can be expected in a case of this sort. Yet the chancellor found that the wife was entitled to a divorce and made *902 no finding that she was not a fit person to have custody of her children. The record also shows that the wife's morality was not questioned in any way.
* * * * * *
"This question of child custody has been before our court on numerous occasions. This opinion would gain nothing by citing a long list of cases holding that, in the absence of special circumstances, the mother should be given the custody of small children, since she is best fitted to bestow the love and care which they require.

"The principles by which we are guided in arriving at our decision were succinctly stated by this court in Slimer v. Slimer, Fla.App. 1959, 112 So.2d 581. Of the many cases on this point that have been decided since the decision in the Fields case, we need note only the Slimer case and Arons v. Arons, Fla. 1957, 94 So.2d 849, and Shepard v. Shepard, Fla. 1956, 87 So.2d 807." (Emphasis supplied).
In Green, the Supreme Court said the following:
"Nature has prepared a mother to bear and rear her young and to perform many services for them and to give them many attentions for which the father is not equipped. As was suggested by the testimony in this case, he might provide a home and have friends see that his little daughter was furnished with playmates while he took his place in the business world as a real estate and insurance broker, but this would hardly compare with the care which the mother is able to, and does, furnish.
"Bearing in mind the welfare of the child and the respective positions of the father and mother, it seems inescapable that the latter is better fitted to be intrusted with her permanent guardianship."
In Hurst is the following:
"We said in Fields v. Fields, 143 Fla. 886, 197 So. 530, 531, that we were inclined to agree with the Supreme Court of Alabama that `other things being equal, * * * the mother of infants of tender years [is] best fitted to betow the motherly affection, care, companionship, and early training suited to their needs.' We now state positively that such is our view."
In Teel, the wife, in filing the divorce suit, had made a wilfully false affidavit that her husband's address was not known and she was granted a divorce upon such constructive service. The husband then sought to have the decree of divorce vacated and to be awarded custody of their child. The Chancellor found that she had falsely sworn to the affidavit and granted the husband permanent custody of the child. Upon appeal the Supreme Court reversed, holding as follows:
"We have often said that children of tender years should be put in the care of their mothers, who are by nature better equipped to rear them. Of course an exception is made in the case of a mother who is proved morally unfit, but such is not the situation here even assuming that the affidavit in the original case contained an untrue statement of the affiant's knowledge of the appellee's whereabouts. That would not reflect a character so depraved as to render the mother an improper parent to nurture her own child."
In Dobbs, "just prior to the final decree of divorce the parents of the child entered into a stipulation that their son might remain with his paternal grandparents". Thereafter, the wife sought a modification of said decree insofar as custody was concerned, admitting she was working but alleging "that if the custody of the child be awarded to her she will cease working and will devote her time and attention to her off-spring". The Special Master found and recommended that "the care, custody and control of the child remain *903 with the grandparents", and "the veteran Chancellor approved, confirmed and adopted the report of the Special Master and entered a modified decree in accordance therewith". Upon appeal the Supreme Court reversed, holding inter alia as follows:
"Although `we are always reluctant to reverse an order made in a proceeding of this nature', Jones v. Jones, 156 Fla. 524, 23 So.2d 623, 625, we are convinced that the Special Master and the Chancellor failed to give appropriate consideration to several of the decisions of this Court. In the case of Jones v. Jones, supra, we held `It is well settled that in a proceeding involving custody of minor children the welfare of the children is the controlling consideration. * * * Ordinarily, in the case of children of tender years such welfare is not best promoted by ordering a divided custody of such children between the parents. * * * or by taking them from the mother, unless it be shown that she is not a fit and proper person to have them.' (See cases cited in Jones v. Jones, supra.) (Italics supplied).
* * * * * *
"We hold that the petition for writ of certiorari should be granted and the order complained of should be quashed, with directions to the Chancellor to award the custody of James David Kelly to his mother Effie Mae Dobbs, provided the said mother ceases working and devotes her time and attention to her minor son; and with the further direction that the father may visit the child at such reasonable times and places as may be determined by the Chancellor." (Emphasis supplied).
We are of the view that these cited cases govern disposition of this appeal, and that the opinion in the Dobbs case, as to the mother ceasing work, points up the directions to be given the able Chancellor below in the further proceedings in this case consequent upon the remand.
The Final Decree appealed from is accordingly reversed as to the custody provisions therein contained, and the cause is remanded with directions that the Chancellor award permanent custody of the two minor children to the appellant here, provided that said mother ceases working and devotes her time and attention to her said children; that the exclusive use and occupancy of the former homeplace of the parties, located at 3024 Douglas Avenue, Tampa, Florida, together with the furniture therein, be awarded to appellant as a place of residence for her and her children; and that, after hearing, provision be made in the modified decree for payment of a reasonable allowance for permanent alimony and support for appellant and the children, without regard to the $10 per week alimony previously fixed.
It is so ordered.
SHANNON, Acting C.J., and LANE, A.H., Associate Judge, concur.
NOTES
[1] There were other so-called "findings" listed in the Master's report, viz: both parties had "filed pleadings" in the cause, each was "represented by Counsel", both parties sought "custody of said children", and "Plaintiff requests * * * alimony", attorney's fee and court costs; but these are merly recitals, not findings.
[2] Rudolph v. Rudolph, Fla.App. 1962, 146 So.2d 397; Hurst v. Hurst, 1946, 158 Fla. 43, 27 So.2d 749; Lee v. Lee, Fla. 1950, 43 So.2d 904.