442 So.2d 338 (1983)
Diane SMITH, Etc., Appellant,
v.
Robert Gerald MOUGHAN, Appellee.
No. 82-1641.
District Court of Appeal of Florida, Fifth District.
December 8, 1983.
W.J. Heffernan, Jr., of Heffernan & Rabinowitz, P.A., Altamonte Springs, for appellant.
Gregory M. Wilson of Taylor & Wilson, Orlando, for appellee.
*339 FRANK D. UPCHURCH, Jr., Judge.
Appellant Diane Smith seeks review of an order denying her request to partition property which she and her former husband, appellee Robert Moughan, owned as tenants in common since the dissolution of their marriage in 1977. Prior to trial in this matter, counsel for both parties filed a joint stipulation of facts to simplify and streamline the issues to be heard by the court.[1] After noting that he was familiar with the issues in the case and after hearing argument, the court concluded that appellant was not entitled to partition because she had waived this right by agreement.
At the time of the dissolution, appellee was not represented by counsel. However, he had attended several settlement conferences at the offices of appellant's attorney. Apparently appellant at that time had no desire to retain any interest in the marital home because it was only at her husband's insistence that she retained her right to one-half of the net proceeds upon the sale of the house.
No children were born of the marriage and both parties have since remarried. Upon remarriage, appellee continued to reside in the home with his new wife and child. He has made all mortgage payments and has made additional improvements.
The court below ruled that appellant was bound by the property settlement agreement which she executed and which was later incorporated into the final judgment of dissolution. Paragraph three of the agreement provides as follows:

Real Property Owned by the Parties as Tenants by the Entirety. The parties are owners by the entirety of certain real property, described as follows:
Lot 15, Block E, Sun Haven 1st Addition, as recorded in Plat Book X, Page 110, Public Records of Orange County, Florida.
The Husband shall continue to have the right to occupy the home and the Husband shall assume and make all mortgage payments upon the same. The Husband and Wife hereby mutually agree to place the property for sale in the event the Husband decides not to occupy the home, upon terms mutually agreeable to each. The Husband shall make all necessary repairs and keep the property maintained until the property is sold. Upon the sale of the home, the net proceeds shall be divided between the parties equally after deducting the normal expenses of sale.
The fairness of the agreement was not challenged below. As part of the agreement, appellant received certain personal property including the household furnishings. The extent and value of these items are not a part of the record. As a consequence, neither the trial court nor this court has any basis in the record for concluding that appellant was inequitably treated in the dissolution settlement.[2]
We note that appellant could have transferred her entire interest in the home to her husband had she been so inclined. Therefore, it follows that she could, by agreement, transfer something less than her entire interest. Regarding agreements to waive partition, the Florida Supreme Court has specifically held as follows:
[T]here is no doubt that the law favors the right to partition. And the general rule is that partition is a matter of right.
* * * * * *
But there are exceptions to the rule. The right to partition may be waived, or one may be estopped to enforce the right *340 by an agreement not to partition either express or implied.
* * * * * *
An agreement never to partition lands or one which unduly or unreasonably restricts partition is generally held to be unenforceable as an unreasonable restraint on the use and enjoyment of property, and therefore contrary to public policy.
* * * * * *
However, under our system of government, our guarantees of right to contract and rights of ownership and use of property, there appears to us to be no valid reason why the owners of undivided interests in property cannot contract not to partition land, except where the prohibition of partition is for an unreasonable and/or indefinite period of time, or is otherwise so unreasonably restrictive as to be contrary to public policy.
We must therefore hold that while partition is a matter of right to those holding undivided interests in lands, such right may be waived or the holder thereof estopped to assert the right by an express or implied agreement, otherwise enforceable, providing said agreement not to partition be for a reasonable and definite period of time and not otherwise unduly restrictive. An agreement not to partition during the life of any of the tenants does not appear to us to be for an unreasonable time. (emphasis added; citations omitted)
Condrey v. Condrey, 92 So.2d 423, 426 (Fla. 1957).
Ordinarily exclusive possession of the marital home is awarded by the court as a facet of support and will terminate upon remarriage of the spouse in possession. See Anderson v. Anderson, 424 So.2d 943 (Fla. 5th DCA 1983); Harvey v. Harvey, 411 So.2d 324 (Fla. 5th DCA 1982); Caldwell v. Caldwell, 400 So.2d 1270 (Fla. 5th DCA 1981). However, there is nothing to prevent a party from agreeing to a particular arrangement as the appellant did here.
AFFIRMED.
DAUKSCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I dissent in this case for two reasons. First, the majority opinion leaves intact an interpretation of a property settlement agreement that I think is patently unreasonable and unfair. The trial judge also thought his interpretation was inequitable because he said so:
I hope the District Court reverses me on the grounds that its not equitable, but I don't think I can do it on those grounds.
Second, the lower court's interpretation violates the public policy articulated by this court regarding the right of an ex-spouse to petition for partition and sale of a jointly-owned marital residence after the other ex-spouse, who had exclusive possession of the residence, has remarried.
The record in this case is woefully brief.[1] The entire transcript consists of the trial attorneys' arguments, but no live testimony. Therefore, the trial judge must have based his judgment on the joint stipulation of facts prepared by trial counsel, the property settlement agreement itself, and a few lines from a deposition that were quoted in the stipulation, because the deposition itself was not put into evidence.[2]
The trial court's construction of the property settlement agreement in this case is not based on conflicting testimony or evidence. It is therefore not entitled to the normal presumption of correctness usually accorded to lower court judgments by appellate courts where the credibility of witnesses is a factor. On the basis of this *341 record, our court is in as good a position to interpret the meaning of the property settlement agreement as was the lower court. See Hoffman v. Condermann, 146 So.2d 776 (Fla. 2d DCA 1962).
The stipulation of facts discloses that the parties married in 1973, and purchased the residence in 1975, taking title to it as tenants by the entireties. They made equal contributions to its purchase and both paid for various improvements (adding a screened room, new carpeting, and a dishwasher), and the mortgage and tax payments. They had no children. The parties separated and divorced in 1977. At that time, the ex-husband insisted that the ex-wife retain her one-half interest in the house. No alimony of any kind was awarded to either party, and neither claimed a special equity in the residence. Both have since remarried. The ex-husband has had exclusive occupancy of the residence since 1977. He has moved a new wife and child into the residence, and he has made additional improvements (dropped ceiling in kitchen and solar system heat recovery unit).
The issue in this case is the proper interpretation of paragraph 3 of the parties' property settlement agreement, which was incorporated into their dissolution judgment. Paragraph 3 provides:
The Husband shall continue to have the right to occupy the home and the Husband shall assume and make all mortgage payments upon the same. The Husband and Wife hereby mutually agree to place the property for sale in the event the Husband decides not to occupy the home, upon terms mutually agreeable to each. The Husband shall make all necessary repairs and keep the property maintained until the property is sold. Upon the sale of the home, the net proceeds shall be divided between the parties equally after deducting the normal expenses of sale.
The ex-wife contends that paragraph 3 does not entitle her ex-husband to exclusive possession of the residence indefinitely, and perhaps for his lifetime. She sought to partition the property after he had exclusive possession of the residence for six years following their divorce. He claimed he has exclusive, indefinite rights to occupy the property. The trial court agreed with him, and it denied the wife's right to partition.
In deciding the meaning of unclear or unspecific contract provisions such as the one involved in this case, a court should select an interpretation that is reasonable and fair to both parties, based on their circumstances and probable intent at the time the contract was formed. James v. Gulf Life Insurance Company, 66 So.2d 62 (Fla. 1953). Both of these parties were equal owners and made equal contributions to their investment in the residence. Neither party claimed a special equity or right to alimony from the other. Under normal circumstances, the residence would have been sold and the net proceeds split equally shortly after the dissolution. See Mayberry v. Mayberry, 437 So.2d 785 (Fla. 2d DCA 1983); Hoskin v. Hoskin, 349 So.2d 755 (Fla. 3d DCA 1977).
It is patently unfair and inequitable to bar the ex-wife's right of partition in this case after a reasonable lapse of time.[3] To interpret the agreement otherwise effectively deprives her of her one-half interest in the property. The property may never be sold during her lifetime, or, if sold years from now, her net share will be reduced by the value of improvements the ex-husband has made without her consent, and her share of the mortgage and tax payments he makes for her, although she will receive no rent or other compensation for tying up her asset. The lower court's interpretation creates a classic bad deal for the ex-wife, and this should have been avoided. If one interpretation of an agreement is
such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational *342 and probable agreement must be preferred... . A court will not place an unjust interpretation upon a contract, unless the terms thereof compel it to do so. (Emphasis supplied).
James at 63 (quoting 12 Am.Jur. Contracts § 250).
But nothing in this record compels the conclusion that the parties meant that the ex-husband would maintain exclusive possession of the residence indefinitely. Paragraph 4 of the property settlement agreement makes no sense if a sale in the reasonably near future was not contemplated by the parties at the time they entered into the agreement. In paragraph 4 the ex-husband agreed to pay certain specified joint obligations, and if he failed to do so, the ex-wife was to be reimbursed for any payments she was forced to make from his share of the net sale proceeds. Or, if the property had already been sold, and the proceeds already divided before she was forced by a creditor to pay some or all of the listed joint obligations, she was given the right to seek and secure a personal judgment against him.[4] At the longest, this clause contemplates a sale within the time a creditor could have sued the ex-wife on the joint obligations, i.e., five years.[5] Beyond that time, the sale proceeds would not have been needed to reimburse her for payment made to creditors.
The ex-husband argues that the ex-wife's excerpt from her deposition clearly establishes she intended he could have exclusive possession of the property without time limits. She testified she understood her ex-husband "could stay in it [the residence] until he chose to sell it. That's what it meant to me at the time, I guess. I just thought it would go sooner than this." (Emphasis supplied). A fair reading of this statement is that although the ex-wife intended no specific time limit for the sale, she thought it would have taken place by now, seven years later.
The ex-wife's interpretation of the agreement is much preferable to the ex-husband's in harmonizing this case with the general law governing the right of joint tenants to partition property. See Hoskin v. Hoskin, 329 So.2d 19 (Fla. 3d DCA 1976). In Hoskin v. Hoskin, 349 So.2d 755 (Fla. App. 1977), six months was held to be a reasonable time for exclusive possession, absent minor children or special equities.
Agreements which unduly restrict the right of partition, or do so for an unreasonable period of time, are generally held contrary to public policy and unenforceable. 68 C.J.S. Partition § 44 (1950). If the agreement is silent on the period of time during which exclusive possession rights will bar a joint tenant from his right to partition, there are only two lines of cases. Under one, courts declare the contract void because it is contrary to public policy, *343 which favors the right of partition.[6] Under the other, courts interpret such an agreement as meaning a limited or reasonable time. Annot., 37 A.L.R.3d 962, 980 (1971); 59 Am.Jur.2d Partition § 7 (1971). Therefore, the trial court in this case should have declared the agreement not to partition void and unenforceable because it was indefinite, or it should have clothed the otherwise naked right with a gown of reasonable and discrete length.[7] To do neither was clear error.
An additional reason to avoid the lower court's interpretation of the agreement is that it requires the ex-wife (the unhoused joint tenant) to provide shelter and sustenance to the ex-husband's (the in-house joint tenant) new spouse and child. This court has held that an award of exclusive possession of a jointly-owned residence must end upon remarriage of the in-house tenant, whether the dissolution judgment says so or not. Anderson v. Anderson, 424 So.2d 943 (Fla. 5th DCA 1983); Harvey v. Harvey, 411 So.2d 324 (Fla. 5th DCA 1982).
The reasons for this policy were forth-rightly articulated in Caldwell v. Caldwell, 400 So.2d 1270 (Fla. 5th DCA 1981). Judge Upchurch said:
The award of exclusive possession of the marital home also contributes to the support of the wife by providing her with rent-free housing. Should the wife remarry and her new husband move into the home with her, appellant would be there contributing to the support of the new husband by providing him with rent-free housing. While we have found no cases on point, we believe the better rule to be that exclusive possession should terminate upon the wife's remarriage.
Id. at 1272. Surely it is just as galling to an unhoused female joint tenant to be forced to support her ex-spouse's new wife and child as it was to the unhoused male joint tenant in Caldwell.
The fact that the unhoused spouse still has minor children living in the residence and exclusive possession may be viewed an aspect of child support does not affect this policy.[8] Nor does the fact that the in-house spouse is required to make all of the mortgage or tax payments during the period of exclusive possession.[9] Further, the fact that the exclusive possession right arose out of a property settlement agreement incorporated into a dissolution judgment rather than a judgment apparently makes no difference.[10]
I would reverse.
NOTES
[1] There was no objection by counsel for either party as to the length of time allotted for trial. Appellant does not even suggest in her brief that she did not receive a fair hearing. The only suggestion that there was not a fair hearing is found in the dissent.
[2] In her dissent, Judge Sharp observes that denying appellant the right to partition effectively deprives her of her one-half interest in the property because her net share will be reduced by the value of improvements, etc. We do not think the agreement supports that conclusion because the agreement provides only for deducting the normal expenses of sale.
[1] Trial counsel requested a half day for trial time, but they were allowed only thirty minutes total. Although neither attorney objected to going forward on this basis, it seems to me these parties were denied their day in court by this proceeding. Non-frivolous suits, such as this one, are entitled to a fair hearing.
[2] See Westinghouse Elevator Co. v. DFS Constr. Co., 438 So.2d 125 (Fla. 2d DCA 1983).
[3] See Whiting v. Gray, 27 Fla. 482, 8 So. 726 (1891).
[4] Paragraph 4 provides:

Joint Obligations. The Husband and Wife hereby mutually agree that the following represents the joint obligations of the parties which have not been assumed or referred to in connection with any personal or real property hereinbefore mentioned, at the signing of the Agreement:

 Approximate Amount
Sears (2 accounts) $650.00
Penneys 300.00
Wards 350.00
Iveys 115.00
Jordan Marsh 200.00
Burdines 150.00
Robinsons 180.00
Green McDonald 350.00
AUCO 900.00

The Husband hereby acknowledges that he assumes and agrees to pay the above-listed obligations as his sole obligation and he hereby releases the Wife from any and obligation to pay the same.
In the event the Husband, for any reason, fails or refuses to pay any obligation listed above and the creditor seeks payment from the Wife and in the event the Wife is forced to pay any obligation assumed by the Husband to the extent of any payment thereon the Wife ill, if the real estate as stated in Paragraph 3 has not been sold, receive, prior to a division of the proceeds, a reimbursement for the payment of said obligation. In the event the property has been sold the Wife shall be able to seek and secure a Judgment against the Husband for any obligation she is required to lawfully pay.
[5] § 95.11, Fla. Stat. (1981).
[6] Condrey v. Condrey, 92 So.2d 423 (Fla. 1957); 12 Fla.Jur.2d Co-Tenancy and Partition §§ 40, 43 & 47 (1979).
[7] See Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So.2d 1053 (Fla. 4th DCA 1983). I do not think that in this case the lifetime of the tenant in common is a "reasonable time" not to partition for the reasons stated above. Condrey involved facts different than this case. A lifetime was a fair and equitable time period there to prevent elderly parents from being ousted by a child from their home in violation of the parties understanding that after putting the home in their joint names, the parents would be supported by the child for the balance of their lives.
[8] Harvey v. Harvey, 411 So.2d 324 (Fla. 5th DCA 1982); Lambert v. Lambert, 403 So.2d 484 (Fla. 1st DCA 1981); Caldwell v. Caldwell, 400 So.2d 1270 (Fla. 5th DCA 1981). But see Cain v. Cain, 436 So.2d 367 (Fla. 4th DCA 1983); Farkas v. Farkas, 426 So.2d 1213 (Fla. 4th DCA 1983).
[9] Anderson; Harvey.
[10] Cannon v. Morris, 407 So.2d 372 (Fla. 1st DCA 1981). But see Farkas (In Farkas, however, the exclusive possession right upheld, unlike this case, was limited to a definite, ascertainable number of years  the minority, inter alia, of the children).