507 So.2d 1136 (1987)
Obdulia MARTIN, Appellant,
v.
Andres MARTIN, Appellee.
No. 86-1177.
District Court of Appeal of Florida, Third District.
May 5, 1987.
Rehearing Denied June 16, 1987.
*1137 Krongold & Bass and Evan R. Marks, Coral Gables, for appellant.
Agustin A. Perez-Cervera, Coral Gables, for appellee.
Before BARKDULL,[*] DANIEL S. PEARSON and JORGENSON, JJ.
PER CURIAM.
Upon dissolution of marriage, the wife was awarded possession of the marital home. The final judgment provides in part:
"[u]ntil she vacates the premises, remarries, or cohabits with another man, whichever occurs first."
We strike from the final judgment of dissolution the cohabitation condition subsequent to possession as not being supported by evidence in the record to justify same. Nichols v. Nichols, 491 So.2d 617 (Fla. 1st DCA 1986); Tyler v. Tyler, 427 So.2d 1027 (Fla. 2d DCA 1983); Miller v. Miller, 423 So.2d 638 (Fla. 4th DCA 1982). If in the future, to protect the welfare of the minor children, this should be necessary, an appropriate application for modification may be sought. McClay v. McClay, 447 So.2d 1026 (Fla. 4th DCA 1984); Tyler v. Tyler, supra.
The final decree of dissolution is affirmed as modified.
BARKDULL and JORGENSON, JJ., concur.
DANIEL S. PEARSON, Judge, concurring.
While I concur in the result, I find it anomalous to disapprove of a provision which would terminate the custodial parent's possession of the former marital home if she cohabits with another man, but, in other cases, to approve of  indeed, to require  a provision which would terminate the custodial parent's possession of the former marital home if the custodial parent remarries.[1] Seizing upon this anomaly, the non-custodial father makes a compelling argument that the result in these cases should be the same, and that since termination is the result in the case of remarriage, it should be the result in the case of cohabitation.[2] Although I agree that there should be no difference in the result, I conclude, contrary to appellee, that termination of possession should not be required in either case.
The final judgment dissolving the Martins' marriage provided, inter alia, for weekly child support payments by the father, shared parental responsibility for their two minor children, primary residential custody in the mother, and exclusive possession of the marital home in the mother while the father's obligation to pay child support continues or "until she vacates the premises, remarries, or cohabits with another man, whichever occurs first." The mother appeals the final judgment, asking that the blanket anti-cohabitation condition be stricken on the ground that such a condition improperly restricts the *1138 private life of the custodial parent and can be imposed only when there is competent, substantial evidence that the condition is necessary to preserve the welfare of the minor children. Since it is true that an anti-cohabitation condition is "sustainable only if the record contains competent, substantial evidence that [it is] necessary to safeguard the children's interests," Danoff v. Danoff, 501 So.2d 1361, 1364 (Fla. 4th DCA 1987), and there is no such evidence in this record, the majority is correct in summarily concluding that the condition must fall. However, because the majority opinion does not address the father's argument, I write separately to do so.
The primary reason for an award to the custodial parent of exclusive possession of the marital home until the children reach their majorities is to maintain the children in as familiar an environment as possible while they attempt to cope with the shockwaves of the dissolution of their parents' marriage. Anyone even slightly conversant with the psychological universe understands that
"[f]or children of tender age, ... the dissolution of the marriage between their parents is an unsettling experience. To require them to move from their home within one year of the traumatic dissolution of marriage can only add to the children's feeling of insecurity and frustration."

Singer v. Singer, 342 So.2d 861, 862 (Fla. 1st DCA 1977).
Thus, when the question before the court is where the children will live when the marriage of their parents is dissolved, Florida courts have consistently declared that, if at all possible, the physical and psychological uprooting of the children of a broken marriage must be avoided and the children must be allowed to remain in their home with the custodial parent. See Neustein v. Neustein, 503 So.2d 439 (Fla. 4th DCA 1987); Cabrera v. Cabrera, 484 So.2d 1338 (Fla. 3d DCA 1986); Pino v. Pino, 418 So.2d 311 (Fla. 3d DCA 1982); Smith v. Smith, 378 So.2d 11 (Fla. 3d DCA 1979).
It is strange, indeed, then, to discover that this appropriately sensitive attitude towards the needs of the children is nowhere to be found when the question before the court is where the children will live when the custodial parent in exclusive possession of the marital home remarries. When that is the question, the unequivocal answer from the courts is a callous: "The custodial parent and the children are to live elsewhere." As one court explained:
"The court [in Duncan v. Duncan, 379 So.2d 949 (Fla. 1980)] did not address the issue whether the award [of exclusive use and possession of the marital home] must terminate upon remarriage of the spouse. Cases decided after Duncan have continued to impose this requirement. The wife argues that the award was labeled `child support' and that child support is unaffected by remarriage of the custodial parent.
"The award of exclusive possession of the marital home also contributes to the support of the wife by providing her with rent-free housing. Should the wife remarry and her new husband move into the home with her, appellant would be then contributing to the support of the new husband by providing him with rent-free housing. While we have found no cases on point, we believe the better rule to be that exclusive possession should terminate upon the wife's remarriage. While this would be a change in circumstances justifying a reexamination of the child support obligation, we hold that one spouse cannot be deprived of his or her right to possession of jointly held property awarded to the other spouse as an incident of child support upon that parent's remarriage."

Caldwell v. Caldwell, 400 So.2d 1270, 1272 (Fla. 5th DCA 1981) (citations omitted) (emphasis in original).
What is the justification for throwing out the babies with the bath water? According to one court, the reason for the rule of wholesale eviction "is to avoid imposing on the former husband the obligation of providing shelter and habitation for his exwife's new spouse." Lambert v. Lambert, 403 So.2d 484, 486 (Fla. 1st DCA 1981). This court, in overturning a final judgment *1139 which granted the custodial wife the use and occupancy of the home until the child attained majority without regard to whether the wife remarried, viewed the provision permitting her to remain in the home after remarriage as "a frustrating and pernicious [obligation] to visit upon the former husband." Abella-Fernandez v. Abella, 393 So.2d 40, 41 (Fla. 3d DCA 1981). See also Smith v. Moughan, 442 So.2d 338, 343 (Fla. 5th DCA 1983) (Sharp, J., dissenting) ("galling" to require ex-wife to provide housing in former marital home for ex-husband's new wife).[3]
While I have little doubt that it would stick in the craw of the supporting spouse to have the supported spouse living, married or not, with a stranger in the house in which the supporting spouse still owns a one-half interest, the indignation that is generated by such a situation hardly justifies the instant removal of supported children living in the house. We long ago recognized that "quite frequently the court must act contrary to the wishes of both parents when it is determining what is for the best welfare of children, including their maintenance." Sirkin v. Sirkin, 204 So.2d 13, 16 (Fla. 3d DCA 1967). Surely the ouster of children from their home is not necessary or appropriate as a means either to avoid the non-custodial parent's having to contribute to the support of the custodial parent's new spouse or to smoothe the ruffled feathers caused by this territorial invasion. Surely the concerns of the non-possessory spouse can be adequately met by less draconian measures. As one California court noted:
"We fail to perceive what adverse impact these conditions [terminating the wife's possession six months after her remarriage or if an unrelated adult male moved into the residence] would have upon respondent's rights in the property or upon the children's need to live in the house as a means of support. While the continual presence of a third person in the residence might well have an adverse emotional impact upon a nonpossessory father, any such effect would be far outweighed by the benefits accruing to the children from occupancy of the family home. It would be unduly harsh to penalize the children for the possessory owner's personal relationship with third parties. Moreover, with respect to the remarriage condition, it has been held that the continuing parental duty to support minor children is independent of the marital status of the parents."

In re Marriage of Escamilla, 127 Cal. App.3d 963, 970, 179 Cal. Rptr. 842, 846 (Ct.App. 1982).
At least one Florida court, paying heed to the caveat of Duncan v. Duncan, 379 So.2d 949, 951 (Fla. 1980), that in respect to the criteria governing "exclusive possession," care must be taken "to avoid inflexible rules of law which unduly restrict the trial judge in determining what is equitable and just," has refused to apply woodenly the rule that remarriage results in termination of exclusive possession. In Briner v. Briner, 425 So.2d 211 (Fla. 4th DCA 1983), the mother received exclusive possession of the home until she remarried, the youngest of three children reached majority, or the mother ceased to live in the house with the children. A year after dissolution, the mother remarried, resided with her new husband in the home for only six months until the birth of their child, and was divorced approximately eighteen months later. Three years later, the first husband petitioned for partition of the house and a change of custody. The wife counter-petitioned for continued possession, *1140 contending that it was in the best interests of the parties' three children to continue to reside in the same house. In further support of her position, she cited the short duration of her second marriage and her former husband's acquiescence in her continued possession notwithstanding her remarriage. She suggested, moreover, that to have the husband pay increased child support for new housing might be less economical than to continue the arrangement then in existence. Predictably, the former husband argued that he had no obligation to house another man's child or his wife's second spouse. The court remanded the case to the trial court to weigh all of these factors and determine an equitable and just result.
Admittedly, the "factors" in Briner favoring no termination are unusual, and the hint as to an awareness of the effect upon the children of the custodial parent's dispossession barely perceptible. However, the case may be a harbinger of a saner approach to the question: where will the children live when the custodial parent in exclusive possession of the marital home remarries? If we begin with the indisputable proposition that it is in the best interests of the children to remain in the marital home, then we need address only the claim that the non-custodial parent is paying rent for the new spouse of the custodial parent. Surely this claim is not so complex that it cannot be adjusted by, for example, requiring the custodial parent to pay to the non-custodial parent a fair rental on behalf of the new spouse or establishing in the non-custodial parent a special equity equal to the fair rental value attributable to the new spouse's occupancy. The solution now employed  to evict the children from their home  represents, I think, the worst of all worlds. It results, first, in a most undesirable, traumatic dislocation of the children and, second, in the usual case, a most uneconomical increase in housing costs for them and, correspondingly, in child support payments for the non-custodial supporting parent. See Sirkin v. Sirkin, 204 So.2d 13. And, finally, because, anomalously, cohabitation without remarriage does not, by itself, result in termination of exclusive possession, to terminate exclusive possession upon remarriage is, ironically, to discourage marriage and encourage cohabitation. As I have said, when, as is almost always the case, the best interests of the children are served by remaining in the marital home, neither the cohabitation nor remarriage of the custodial parent should cause their dispossession.
JORGENSON, J., concurs.
NOTES
[*] Participated in decision but not oral argument.
[1] The judgment under review also provides for termination of possession upon remarriage, but the appellant has not attacked this provision.
[2] Moralists might argue that cohabitation is an even stronger case for termination than remarriage.
[3] The antipathy of courts to the thought of an unhoused former spouse being required to provide shelter for a complete stranger apparently developed in the context of alimony and not child support. See, e.g., Garlinger v. Garlinger, 129 N.J. Super. 37, 39, 322 A.2d 190, 191 (Ch.Div. 1974) ("[P]ost-marital unchastity by an ex-wife is not automatically a bar to her right to alimony. She does not owe a duty of chastity to her ex-husband, nor he to her. However, the ex-husband is not required ... to pay for the support of one who fornicates or commits adultery with her."). Whether a former spouse should lose entitlement to exclusive use and occupancy of the marital home upon remarriage or cohabitation is an entirely different question from whether the children should be ousted as a result of the custodial parent's action.